Argued and submitted October 3, affirmed November 22, petition for rehearing denied
December 28, 1983

## STATE OF OREGON,
*Respondent on review,*

*v.*

## XAVIAR LEE LOUIS,
aka X. L. Louis,
*Petitioner on review.*

(Nos. CR82-527, CR82-528,
CA A26080, A26081, SC 29834)

672 P2d 708

Michael E. Swaim, Salem, argued the cause and filed the petition for petitioner on review. On the brief was Dennis Sarriugarte, Independence.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Linda Acaldo, Assistant Attorney General, Salem.

JONES, J.

## JONES, J.

Defendant was convicted of three counts of public indecency. The Court of Appeals affirmed and the defendant petitioned this court to review two issues. The first is whether the telephoto photographing of defendant in his living room by the police was a warrantless search. The second issue deals with whether the prosecution may introduce evidence of similar prior acts to prove knowledge under OEC 404(3).

Responding to a citizen's complaint in May of 1982 that the defendant had been exposing himself in his living room window on a regular basis, the police contacted a neighbor across the street from the defendant's residence. With the neighbor's permission, an officer set up a concealed 35 mm camera equipped with a 135 mm telephoto lens in the neighbor's garage and focused on the defendant's street-level living room window approximately 100 to 120 feet away. No warrant was obtained by the officer. During the next week, the defendant was photographed by the officer on at least four occasions. These photographs were later enlarged and depicted the naked defendant with exposed genitals from the front, left and right profiles. Defendant was charged with four counts of public indecency. ORS 163.465(1).[1] The defendant made a motion to suppress the photographs on the basis that the evidence was obtained as a result of an illegal and warrantless search of the defendant's premises. The motion was denied and the photographs were admitted at trial.

In the defendant's opening statement, defense counsel stated that the defendant would not testify. Defense counsel asserted that while the defendant may have been exposed, there was no intent to arouse the sexual desire of the defendant or another person, which is an element of the crime of public indecency. ORS 163.465(1)(c). He asked the jury to study the photographs carefully for any evidence of sexual

---

[1] ORS 163.465(1) provides:

"A person commits the crime of public indecency if while in, or in view of, a public place he performs:

(a) An act of sexual intercourse; or

(b) An act of deviate sexual intercourse; or

(c) An act of exposing his genitals with the intent of arousing the sexual desire of himself or another person."

arousal. Further, defense counsel advised the jury that a part of the defense would be evidence of exculpatory statements made by the defendant to the police upon his arrest. During booking, the defendant claimed that he could not see in his neighbors' windows and, therefore, he could not understand how anyone, including his neighbors, could see in his windows.

At trial, the state put on evidence of prior contacts the police had with the defendant. These prior contacts were incidents in 1980 and 1981 in which the police responded to complaints that included contentions by the neighbors that they could see the defendant exposing himself in his living room window. At that time, the police spoke with the defendant about the complaints and they gave him notice that he could be seen by the neighbors through his window. The trial court admitted the testimony of an officer regarding these prior contacts because this evidence of similar prior conduct directly rebutted defendant's contention made during opening statements that he could not understand how anyone could see him.

## THE SEARCH ISSUE

The first issue to determine is did the defendant exhibit an intention to protect his privacy? The transcript reveals and the jury obviously found from the testimony of the police officer and one of the defendant's neighbors, that the defendant could be seen from the neighbor's garage and from the street, without the aid of a telephoto lens. That fact makes it unimportant that the police officer used a 135 mm lens in obtaining evidence for trial.

Defendant was observed in his living quarters, which are the quintessential domain protected by the constitutional guarantee against warrantless searches. Application of the guarantee to people's "houses," Or Const, Art I, § 9, need not depend on also showing an "expectation of privacy." That phrase was employed in *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), to extend personal Fourth Amendment protections beyond the areas literally protected by that amendment (in that case to a person using a public telephone booth), not to qualify the unquestioned protection afforded to private quarters. Such an issue was presented in *State v. Holt,* 291 Or 343, 630 P2d 854 (1981), which involved a public toilet stall. But in respect of constitutionally protected

premises, the issue is whether the officers conducted a "search."

■■    Nevertheless, not everything that police officers see or hear one do in private quarters requires a search warrant. The question is when observation (or listening) becomes a "search" within the legal meaning of that term. Persons may conduct themselves in otherwise protected areas in such a way that their words or acts can plainly be seen or heard outside without any special effort. One would not, for instance, expect police to obtain a search warrant to charge violation of a noise ordinance against sounds emanating from private premises. An indecent exposure in a window opening to public view is not very different. This, we think, is all that can properly be meant by the phrase that a person's conduct within private premises may be such as to sacrifice the "expectation of privacy."

■■    Such a case may not be made out, however, if objects or conduct in protected premises can be seen or overheard only by technologically enhanced efforts. A determined official effort to see or hear what is not plain to a less determined observer may become an official "search." The photographs used as evidence in this case did not represent such an effort; they merely recorded what could be seen and had been seen without the camera. A 135 mm lens does not shed light into darkness and provides only modest enlargement, not more than three times normal vision.[2] *Cf., State v. Blacker,* 52 Or App 1077, 630 P2d 413 (1981) (use of telescopic scrutiny of objects within home that were not otherwise visible from the outside held unlawful search). Even a modest telescopic enlargement, like an electronic amplification of sounds, might be a "search" for something not otherwise clearly discernible; but that is not this case. We find no unlawful warrantless search in this case.

## PRIOR ACTS ISSUE

We turn now to the question of the admissibility of "prior similar acts" of the defendant offered by the state in its

_____

[2] A different issue, when the prosecution is for indecent exposure, would be whether the public in fact would have the same view that was captured on film by the telephoto lens; but that issue concerns the weight of the photographic evidence, not whether it resulted from an unlawful "search."

case-in-chief to prove the defendant's knowledge that his naked body could be seen from the street by his neighbors and members of the public. The defendant affirmatively put in issue whether he had knowledge that his body was exposed to the public. The defense "opened the door" to that evidence during opening statements when defense counsel stated:

> "Nowhere in those pictures will you see an aroused man. * * * That's the key to this case. * * * He protested that he didn't know he could be seen."

The state rebutted this contention by introducing evidence of prior incidents during which the police told the defendant that his neighbors could see him exposing himself in his living room window.

OEC 404(3) provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

█ █ Clearly, the prior acts were admissible to show knowledge. They were not offered for the purpose of proving defendant's propensity to commit any crime or engage in any unlawful act. Of course, before evidence of prior crimes, wrongs or acts will be admitted under OEC 404(3), that evidence must be relevant and the probative value must outweigh the prejudicial effect. OEC 403. In this case, the evidence was relevant and the probative value outweighed the prejudical effect.

Affirmed.