Argued and submitted August 5, reversed and remanded November 18, 1987, reconsideration denied February 12, petition for review denied March 15, 1988 (305 Or 331)

## STATE OF OREGON,
*Appellant,*

*v.*

## BRIAN DUANE CORRA,
*Respondent.*

## (86-CR-0260-JC; CA A42471)

745 P2d 786

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Thomas J. Crabtree, Bend, argued the cause for respondent. With him on the brief was Crabtree & Rahmsdorff, Bend.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

**WARDEN, P. J.**

The state appeals from a trial court order suppressing evidence in this prosecution for manufacture of a controlled substance. ORS 138.060(3). We reverse.

Defendant lives in a duplex in Bend. A six-foot high solid wood fence separates his backyard from that of his neighbor to the rear. Acting on an anonymous tip that defendant was growing marijuana, Officer Sawyer received permission to enter that neighbor's yard in order to look into defendant's. Sawyer is 5' 10" tall; in order to look over the fence, he stood on a rock in the neighbor's yard, which was a foot high. He saw several small marijuana plants growing in a styrofoam cup in defendant's yard, and he watched defendant come out of his residence, pick up the cup and take it inside. On the basis of what he had seen, Sawyer obtained a warrant to search defendant's house and, armed with the warrant, seized the plants.

Defendant moved to suppress evidence of the plants on the ground that Sawyer's observations over the fence were a warrantless search that violated his privacy rights and that the subsequent warrant was invalid, because it was based on those observations. He relies on both Article I, section 9, of the Oregon Constitution and the Fourth Amendment. The trial court, without stating on which constitution it relied, held that Sawyer's actions violated defendant's reasonable expectation of privacy and ordered the evidence suppressed.

■ ■  We first consider whether Sawyer's actions were a search under Article I, section 9. Defendant's backyard was part of the curtilage of his home, and the constitution therefore protects both his privacy and property interests in it. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986); *State v. Elkins,* 245 Or 279, 288-289, 422 P2d 250 (1966); *State v. Lee,* 120 Or 643, 253 P 533 (1927); *see also State v. Dixson/Digby,* 87 Or App 1, 740 P2d 1224 (1987). Sawyer did not intrude into the backyard and, therefore, did not violate defendant's property interests. A search occurs, however, when the police invade a person's privacy interest. *State v. Owens, supra,* 302 Or at 206. The issue is whether Sawyer violated defendant's privacy interest by standing on a rock in order to see what was otherwise hidden.

■      Although defendant had a privacy interest in his backyard, he could not insist that others ignore that which was available to their senses.

> "Persons may conduct themselves in otherwise protected areas in such a way that their words or acts can plainly be seen or heard outside *without any special effort.*" State v. Louis, 296 Or 57, 61, 672 P2d 708 (1983). (Emphasis supplied.)

Defendant argues, in essence, that it is a special effort for an officer to stand on a rock to see over a six-foot high fence. He notes, as did the trial court, that that is the normal maximum height for fences in Bend. We agree with defendant that Article I, section 9, restricts the ability of the police to peer over fences. If an officer may climb to any height or stand on any support in order to look over a fence, privacy in fenced but unroofed yards will be meaningless and, as defendant emphasizes, nude sunbathers will have other worries besides getting skin cancer.

■      In this case, however, we hold that Sawyer did not exceed the state constitution's limits. So far as the record reveals, his observations of defendant's backyard took only a short time; they were not significantly longer than a neighbor's might be. Although Sawyer was not, many people, including, according to the record, at least one Bend policeman, are tall enough to look over a six-foot high fence without standing on the rock; they could have seen what Sawyer saw "without any special effort." We see no constitutional significance in Sawyer's standing on the rock to see what some others could see without standing on it. Under Article I, section 9, defendant does not have a privacy interest which applies only against short people.[1]

We next consider defendant's Fourth Amendment arguments. Defendant argues that he had a reasonable expectation of privacy in his backyard and that Sawyer violated that expectation. *See Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). We agree that he exhibited a subjective expectation of privacy. He cites several cases with

---

[1] Sawyer also testified that he could see the marijuana through chinks in the fence. We do not decide whether that fact would in itself justify the observations. There may be a difference between looking over a fence which everyone knows is too short to preclude all observation and using chinks and cracks to peek through a fence which appears to be otherwise adequate to prevent such snooping.

similar facts, arguing that they show that the expectation was reasonable. In *U.S. v. Cuevas-Sanchez,* 821 F2d 248 (5th Cir 1987), the defendant's backyard was surrounded by a fence that varied between five and ten feet in height. The police placed a video camera on the top of a power pole and kept the part of the yard protected by the ten-foot portion of the fence under continuous surveillance. The court held that that action was a search, even though passersby could see some of the yard by looking over the shorter part of the fence and a power company employe could see all of it from the top of the pole. It emphasized that the intrusion from the camera was not minimal, as an intrusion by an aerial fly-over would be, and held that the defendant's expectation of being free from that kind of constant surveillance was one that society would recognize as reasonable. However, the court upheld the search, because there was a valid warrant authorizing it.

In *United States v. McMillon,* 350 F Supp 593 (DDC 1972), there was a six-foot high fence surrounding the defendant's yard. One officer could look over the fence only by standing on a box, but another was tall enough to videotape the yard by holding a camera at eye level. The court held that there was no search. LaFave states that this case comes close to the limit of non-search surveillance.

> "Surely there comes a point at which it can be said that the householder has done all that can be reasonably expected of him to keep his yard private, even though the police by some extraordinary measure have been able to breach that privacy without physical entry. Thus, if a person has surrounded his property with a solid wooden fence eight feet high, it is fair to say that he has a justified expectation of privacy there even if the police are able to locate some small crack or knothole by which to peer inside." 1 LaFave, *Search and Seizure,* § 2.3(g), 418 (2d ed 1987).

Although the question under the Fourth Amendment may be a close one, we do not believe that society is willing to recognize as reasonable an expectation of freedom from brief observations over a six-foot fence in these circumstances. Defendant had reasonably to expect that his neighbors might glance into his backyard; Sawyer did no more.

Reversed and remanded.