Argued and submitted July 15, reversed and remanded for new trial December 21, 1988

# STATE OF OREGON,
*Respondent,*

*v.*

# STAN D. CASCONI,
*Appellant.*

(87-11632; CA A47332)

766 P2d 397

J. Kevin Hunt, Oregon City, argued the cause and filed the brief for appellant.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Brenda J. Peterson, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals his conviction for public indecency. ORS 163.465. He contends that warrantless police surveillance of a public restroom violated his rights under Article I, section 9, of the Oregon constitution, and the Fourth Amendment and that the evidence gained should be suppressed. The trial court refused to suppress. We reverse.

The Oregon State police conducted clandestine surveillance of a restroom in a freeway rest area. A hidden camera was directed at two doorless toilet stalls that were separated by a metal partition. The camera was located at a hole in an outside concrete wall. Urinals in the facility were partitioned from the toilets. The toilet interiors could not be seen from the building entrance or from the urinals. The officer operating the camera knew when persons entered or left the restroom by the sound of the door opening and by radio communication from an officer stationed outside in a van. The operator activated the camera whenever he thought illegal activity might occur. There was no warrant authorizing the surveillance.

Defendant entered the restroom alone. He was filmed writing on the wall inside stall number one, exposing his genitals and masturbating. The officer saw defendant only through the camera. When one person entered the restroom, he stopped masturbating and covered himself until the person left. When a second person entered to use a urinal, he continued to masturbate. Neither person could see defendant. The officer did not see anyone look over, under or into defendant's stall. No one in the restroom saw defendant expose his genitals or masturbate. Defendant contacted no one in the restroom. He was arrested outside.

If defendant prevails under Oregon law, we need not address federal constitutional issues. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983). The first issue is whether the use of a hidden surveillance camera was a search or seizure under Article I, section 9. A search occurs when "the privacy to which one has a *right,*" *State v. Campbell,* 306 Or 157, 164, 759 P2d 1040 (1988), is intruded upon in a governmental effort to secure evidence. (Emphasis in original.) Generally, before the government can embark on a search, it must have individualized suspicion of wrongdoing and a warrant. *State v. Boyanovsky,* 304 Or 131, 134, 743 P2d 711 (1987). If there is no

warrant, the state has the burden of justifying its action under an exception to the warrant requirement. ORS 133.693(4).

In this case, there was no warrant nor any exigency that would justify an exception to the warrant requirement. However, unless defendant had a privacy interest that was invaded, the lack of a warrant is irrelevant. The state contends that defendant's conduct in an open toilet in a public restroom was not protected, because acts open to public view are not protected. The state argues, in essence, that police conduct is not a search if the object of the search could have been discovered by conduct that would not be a search. It relies on *State v. Louis,* 296 Or 57, 672 P2d 708 (1981), for the proposition that acts that are open to public view are not protected from police observation. In *Louis,* the Supreme Court held that the use of a telephoto lens to photograph the defendant standing in view through his living room window was not a search, because the camera merely recorded what could already be seen by the general public through his window. The court went on to say:

> "[S]uch a case may not be made out, however, if objects or conduct in protected premises[1] can be seen or overheard only by technologically enhanced efforts. A determined official effort to see or hear what is not plain to a less determined observer may become an official 'search.' " 296 Or at 61.

That information may be legally obtained does not mean that every method that can be used to obtain the same information does not invade an individual's privacy interest or constitute a search. As the court noted in *State v. Campbell, supra,* 306 Or at 167, in its discussion of *Louis,* if the officers had entered the defendant's living room without a warrant or exigent circumstances to observe what could be seen from the street, the result would have been an unlawful search. The question is not whether the acts recorded by the camera were "exposed to public view"; they were not. The question is whether using the concealed camera was a search.

We must look to the nature of the act alleged to be a search. No one has a constitutional privacy interest that

---

[1] The court's reference to "protected premises" in this context does not suggest that the interests protected against searches by Article I, section 9, are limited to interests in physical things. *State v. Campbell, supra,* 306 Or at 169.

shields him from all forms of scrutiny. To determine whether government use of technology and enhanced surveillance techniques violates a privacy interest, the court must decide whether it will "significantly impair 'the people's' freedom from scrutiny." *State v. Campbell, supra,* 306 Or at 171. Anyone who used the toilet involved here would expose himself (so to speak) to the camera. Simply because an individual chooses to use a public restroom or a stall without doors does not mean that he is automatically deprived of all privacy when he enters. "The final bastion of privacy is to be found in the area of human procreation and excretion" and "[if] a person is entitled to any shred of privacy, then it is to privacy as to these matters." *Sterling v. Cupp,* 44 Or App 755, 761, 607 P2d 206 (1980), *aff'd as modified,* 290 Or 611, 624, 625 P2d 123 (1981). Allowing the police to conduct hidden surveillance of a doorless toilet stall significantly impairs freedom from scrutiny.

A similar problem was posed in *State v. Holt,* 291 Or 343, 630 P2d 854 (1981). Although that case was decided when the Fourth Amendment and Article I, section 9, were generally regarded in Oregon caselaw as coextensive, the rationale is still helpful. In that case, the court dealt with clandestine surveillance of the same public restroom as here. After an officer, from a hole above the toilet, noticed Holt's suspicious acts in the restroom, he entered the restroom and sat in the neighboring toilet stall. Although the officer had seen no illegal activity through the hole, while seated in the restroom he observed Holt masturbating and attempting to lure another person into some sort of participation. The court held that the defendant had no reasonable expectation of privacy under the Fourth Amendment, because he committed his acts so that other restroom users could see him. His conviction was affirmed. Here, the police observed defendant only by the hidden camera.

■    The use of the concealed camera unlawfully invaded defendant's privacy and, therefore, constituted a search. Or Const, Art I, § 9. Because the police had no warrant and the state offers no other support for the search, defendant's motion to suppress should have been granted. *See State v. Owczarzak,* 94 Or App 500, 766 P2d 399 (1988).

Reversed and remanded for a new trial.