Argued and submitted March 20, reversed and remanded September 25, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARVIN LEE HOLIDAY,
*Defendant-Appellant.*

Multnomah County Circuit Court
101051182; A147796

310 P3d 1149

Erin Snyder, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant appeals his conviction for possession of cocaine, ORS 475.884, assigning error to the trial court's denial of his motion to suppress. Believing that defendant was in violation of a term of his probation, police unlocked and opened the door to the public restroom that defendant was occupying. The state argued below that entry into the restroom was lawful because the officer who unlocked the door had reason to believe that defendant was trying to evade him and that, once defendant came out of the restroom, cocaine residue on a "crack pipe" was in plain view. On appeal, the state modifies the "evasive action" rationale by arguing that entry into the restroom was lawful because defendant had no privacy interest there due to the inferable fact that he was not using it for a "private purpose." The state also argues that, even if the entry was unlawful, the evidence would inevitably have been discovered; the state concedes that this argument was not raised at trial, but maintains that we should consider it under the "right for the wrong reason" rationale. *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001). As explained below, that rationale is inapplicable in this case.

Although the trial court made no explicit findings of fact when denying defendant's motion to suppress, the parties essentially agree on the relevant historical facts for purposes of this appeal. Where there was disagreement and the trial court could have reached its ultimate conclusion only by resolving that disagreement one way, we presume that it did so. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). With that understanding, the relevant facts are as follows.

Officer Albertson, who was assigned to Portland's mounted patrol unit, saw defendant sitting on a park bench near downtown. Albertson recognized defendant; they had had several encounters in the past, which Albertson described as "mere conversation and/or arrests." Albertson knew that defendant was currently on probation. After losing sight of defendant, he contacted defendant's probation officer and learned that defendant was in violation of one of the terms

of his probation. The probation officer also asked that defendant be detained should Albertson encounter him again.

Later that afternoon, Albertson again saw defendant, who was near a public one-person restroom. As Albertson approached, defendant quickly moved to the restroom ("made a beeline," in Albertson's words), a distance of about 50 feet, and went inside. Albertson trotted his horse over to the restroom and found the door locked. He then pounded on the door and yelled for defendant to come out. Defendant did not respond. Albertson used his radio to determine whether a nearby officer had a key to the restroom. Officer Helfrich responded that he had a city-issued restroom key. Helfrich then drove to the scene, arriving a few minutes after Albertson had radioed for assistance. Helfrich knocked on the door and yelled to defendant that the police were outside. After a few seconds, the officer opened the door with the key. Once the door was opened, defendant came out of the restroom carrying a plastic grocery sack. Officers handcuffed him and placed the sack on the hood of Helfrich's patrol car. Inside the plastic sack were a number of personal items including eyeglasses, mail, medication, and a small clear plastic bag with defendant's name on it. Inside that plastic bag was a white cardboard box. Inside that box, apparently in "plain view," was a glass pipe that Helfrich immediately recognized as a "crack pipe." The officers then seized the pipe, which subsequently tested positive for cocaine residue.

Before trial, defendant moved to suppress all evidence derived from the warrantless entry into the locked bathroom. Defendant argued that, when police unlocked the door to the restroom he was occupying, they conducted a warrantless search in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. In her opening statement at the supression hearing, defense counsel stated as one basis for her argument,

"he was in a locked bathroom, and they used a key to go in and get him. * * * The cases that I have cited [State v. Casconi, 94 Or App 457, 766 P2d 397 (1988), and State v. Owczarzak, 94 Or App 500, 766 P2d 399 (1988)] * * * talk about a person's right to property—I mean, excuse me, privacy. * * *

The facts of the matter are slightly different, but it has to do with officers who used a camera to observe people in a bathroom.

"What it stands for is the proposition that people have a privacy right to the bathroom. * * *

"In this particular case, Mr. Holiday was in a locked bathroom and the cops used a key to go in after him."

Defense counsel also argued that searching defendant after he came out of the restroom was a warrantless search that did not meet any of the exceptions to the warrant requirement, in particular the "search incident to arrest" and "inventory" exceptions: "[I]t was an unlawful search, it was not a search incident to arrest, it was not a proper inventory search. * * * Based on that, all evidence of the residue found in a pipe should be suppressed."

The only testimony at the suppression hearing came from Albertson and Helfrich, who described the events related above. For its part, the state advanced only three arguments at the hearing: first, that ORS 137.545 authorizes the arrest of a probationer when an officer has reason to believe that the probationer is out of compliance with a condition of probation; second, that defendant's "evasive action" into the restroom created "probable cause," presumably "probable cause" to believe that defendant was fleeing from the officer;[1] and third, that, once defendant was out of the restroom, the crack pipe was in plain view. The prosecutor did not argue that the police action in opening the door to the restroom was not a search. He did not utter the

---

[1] In particular, the state argued:

"Officer Albertson saw Mr. Holiday * * * across the park, and he stated he saw him get up and move very quickly to the bathroom. And Officer Albertson took this to mean he was trying to get away from Officer Albertson based on where he was. Now, they had previous encounters before, so it's reasonable to assume, Your Honor, that Mr. Holiday knew Officer Albertson as well. When he saw him coming towards him, he made for the restroom.

"Now, he has at this time believed there is a detainer and he has what he saw as being an evasive action on the part of Mr. Holiday going into the bathroom.

"* * * * *

"[S]o here you have, Your Honor, a lawful detention based upon the detainer, and coupled with the fact that he saw Mr. Holiday run into the bathroom with haste. Those two give Officer Albertson probable cause[.]"

phrase "privacy interest," much less advance an argument that defendant had no such interest.

The trial court denied defendant's motion without explanation. A jury subsequently found defendant guilty of unlawful possession of cocaine, ORS 475.884.

On appeal, defendant assigns error to the denial of his motion to suppress, arguing that, in opening the door to the restroom, the police conducted a warrantless search and that no exception to the warrant requirement applies. The state's two-fold response on appeal is that unlocking the restroom door was not a search under Article I, section 9, because defendant was not using the restroom for a "private purpose" and that, in any event, the facts adduced at the hearing are sufficient to support the conclusion that, although the trial court's reasoning was erroneous, its decision was correct under the "inevitable discovery" rationale: The disputed evidence "'inevitably would have been discovered, absent the illegality, by proper and predictable police investigatory procedures.'" *State v. Johnson*, 340 Or 319, 326, 131 P3d 173 (2006) (quoting *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986)).

We begin with the state's contention that the evidence was admissible because opening the restroom door was not a search. The state appears to concede, as it must, that generally a restroom is a place where a person has a protected privacy interest. *See Casconi*, 94 Or App at 461 (so stating). The state argues, however, that "[d]efendant did not have a protected privacy interest in the public restroom because he demonstrated, by his actions, that he was not using it for any private purpose." The first problem with that argument is that it was not raised below. The state did argue that the officers could open the restroom door because defendant entered in order to avoid Albertson. That argument was evidently based on the theory that, in such a situation, no warrant is necessary. That is a far cry from the argument that no search occurred. At no time did the state maintain that no search occurred or that defendant had no protected privacy interest in the restroom. The argument below was that the police complied with Article I, section 9; the argument on appeal is that Article I, section 9, simply

does not apply. *See State v. Smith*, 327 Or 366, 374, 963 P2d 642 (1998) (because police act was not a search, Article I, section 9, does not apply).[2]

In any event, the state's argument is wrong on the merits. For the purposes of Article I, section 9, "a search occurs when the government invades a protected privacy interest." *State v. Meredith*, 337 Or 299, 303, 96 P3d 342 (2004). The focus of the inquiry is on the question of whether the particular practice that is alleged to be a search, "if engaged in wholly at the discretion of the government, will significantly impair 'the peoples' freedom from scrutiny, for the protection of that freedom is the principle that underlies the prohibition on 'unreasonable searches' set forth in Article I, section 9." *State v. Campbell*, 306 Or 157, 171, 759 P2d 1040 (1988). In focusing on that question, the court must consider "the particular context in which the government conduct occurred" and also "consider the interest for which defendant asserts constitutional protection and determine whether that interest is 'private' within the meaning of Article I, section 9." *Meredith*, 337 Or at 306, 304. The right to privacy protected by Article I, section 9, is not defined in terms of a defendant's "reasonable expectations." *Campbell*, 306 Or at 164. Rather a "privacy interest * * * is an interest in freedom from particular *forms of scrutiny.*" *Id.* at 170 (emphasis added). Thus, in cases involving the alleged violation of a protected privacy interest, the analytical focus is on the government's conduct rather than on a defendant's subjective expectations. *See Casconi*, 94 Or App at 460 ("We must look to the nature of the act alleged to be a search.").

While "[n]o one has a constitutional privacy interest that shields him from all forms of scrutiny," *id.* at 460-61,

---

[2] The state conceded at oral argument that it did not make the "no search" argument below, but maintains that the record demonstrates that the trial court must have considered the argument and rejected it. For that reason, the state contends, the state's failure to articulate the argument does not preclude appellate review. From our own review of the record, we are not convinced that the trial court considered the unspoken "no search" argument. To the extent that it was alluded to at all, it was defendant and not the state that did so; the state offered no response until its opening brief on appeal. Further, the trial court provided no explanation for its decision to deny defendant's motion, and the state made several arguments that the court might have agreed with. The state does not maintain that we should apply the "right for the wrong reason" rationale with respect to the question of whether a search occurred.

we have also recognized that, although "every man's house is his castle," *State v. Jordan*, 288 Or 391, 396, 605 P2d 646 (1980), a restroom is his "bastion of privacy," *Casconi*, 94 Or App at 461 (internal quotations marks omitted). We have also held that the clandestine police surveillance of the inside of a public restroom is an invasion of the people's freedom from scrutiny. *See id.*; *Owczarzak*, 94 Or App at 503-04. It is clear, therefore, that defendant was protected from certain forms of warrantless police scrutiny while he was occupying the public restroom. The question remains, however, whether defendant was protected from that scrutiny in "the particular context" in which it occurred. *Meredith*, 337 Or at 306.

Here, the act that defendant characterizes as a search was police using a key to unlock and open the door to a public restroom after spending a few minutes pounding on the door and telling defendant that he had to come out because he was under arrest. The particular context that the state points to in defense of its argument that defendant had no constitutionally protected privacy interest is that defendant was not using the restroom for a "private purpose." We are uncertain as to what, exactly, the state means by "private purpose." If it means that defendant was not using the restroom for its *intended* purpose, then the argument cannot be reconciled with *Casconi*, 94 Or App at 459, or *Owczarzak*, 94 Or App at 502, where we held that the defendants had protected privacy interests while they were in the restroom masturbating. If, on the other hand, the state means to argue that defendant has no privacy interest because the purpose of his being in the restroom was not "private," that argument cannot be reconciled with the facts or with the state's theory of the case—that defendant entered the bathroom precisely to *achieve* privacy, that is, to achieve freedom from the necessity to confront Albertson. In sum, we conclude that, even if the state had not introduced the "no search" argument for the first time on appeal, the argument would fail on the merits. The state did not establish that, when the police unlocked and opened the door to the public restroom in which defendant was located, they did *not* interfere with a protected privacy

interest. That police action, under the circumstances of this case, was a search.

The state next argues that, even if opening the restroom door was a warrantless search and did not fall within any of the exceptions to the warrant requirement—*i.e.*, even if the search was unlawful—the evidence that the defendant sought to have suppressed was properly admitted because it would have been inevitably discovered. Therefore, the state reasons, the discovery of the crack pipe did not derive exclusively from the unlawful search. *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). The state can show inevitable discovery by proving that "police inevitably would have obtained the disputed evidence through lawful procedures[.]" *Id.* As the Oregon Supreme Court has explained more fully:

> "The 'inevitable discovery' doctrine 'permits the prosecution to purge the taint of illegally obtained evidence by proving, by a preponderance of the evidence, that such evidence inevitably would have been discovered, absent the illegality, by proper and predictable police investigatory procedures.' To prevail on an inevitable discovery theory, the state must establish, 'by a preponderance of the evidence: (1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question.'"

*State v. Johnson*, 335 Or 511, 514 n 2, 73 P3d 282 (2003) (quoting *Miller*, 300 Or at 225-26 (citations omitted)).

The state concedes that it did not present an inevitable discovery argument to the trial court. Nevertheless, the state argues that we should affirm the trial court's decision under the "right for the wrong reason" doctrine. That doctrine gives us the discretion to affirm a lower court's ruling on different grounds

> "when certain conditions are met. The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent

with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance. The second condition is that the decision of the lower court must be correct for a reason other than that upon which the lower court relied. Third, and finally, the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance."

*Outdoor Media Dimensions Inc.*, 331 Or at 659-60 (emphasis in original). In this case, the state argues that, because defendant could not escape from the restroom, officers "eventually would have been able to detain [defendant] and thus [would have] discovered the pipe in plain view."

The state's argument fails, however, because if the state had argued inevitable discovery at the suppression hearing, the record would certainly have developed differently. The state would have had to establish that "proper and predictable investigatory procedures" would have occurred. There is no evidence in the record about what those procedures are, and defendant had no opportunity to question witnesses or present argument as to whether they were "proper and predictable." Further, the state would have had to establish that, had the officers not opened the door, they would have been willing to wait for however long it took defendant to decide to leave on his own. The state would also have had to establish that, during his time in the restroom before deciding to exit, defendant would *not* have put the crack pipe some place where it was out of plain view or washed out the cocaine residue.

We therefore conclude that, in opening the door to the locked restroom, the police conducted an unlawful search, and further, the reason that the state advances on appeal to justify denying defendant's motion to suppress was

not advanced below and cannot be sustained under a "right for the wrong reason" rationale.

Reversed and remanded.