SHORR, J.
*582 Defendant appeals a judgment of conviction for public indecency, ORS 163.465. Before trial, defendant moved to suppress the observations of two police officers who, from several feet away, glanced under a partition of a public restroom stall and saw defendant lying on the floor masturbating. Defendant argued that the officers conducted a warrantless search that violated his right to privacy under Article I, section 9, of the Oregon Constitution. The trial court denied defendant's motion after finding that there was no search. On appeal, defendant assigns error to that ruling. For the reasons discussed below, we conclude that the officers did not engage in a warrantless search because defendant did not have a protected privacy interest while lying on the floor of the public restroom stall. Accordingly, we affirm.[1]
We state the facts consistently with the trial court's implied and express factual findings. State v. Ehly , 317 Or. 66, 75, 854 P.2d 421 (1993). Portland State University (PSU) Police Officers Marks and Troppe were dispatched to investigate a report of someone lying on the floor of a toilet stall in a public restroom in the PSU Urban Center in downtown Portland. Both officers wore body cameras that recorded the following events. The officers arrived at the restroom, which has one exterior door into a vestibule and a second interior door into the restroom itself. Marks and Troppe entered the common area of the restroom. Both immediately saw a person, defendant, lying on the floor inside one of the restroom stalls. The officers could see defendant through the approximately 12-inch gap between the floor and the bottom of the stall door. The officers saw that defendant's pants were partially down and that his arm was moving quickly up and down. Marks, who immediately suspected that defendant was masturbating, bent over at the waist to a 90-degree angle at his hips while standing between three and five feet from the stall to see exactly what defendant was doing. Marks saw defendant masturbating with *583 his genitals exposed. At the same time, Troppe, who was concerned that defendant was having a medical emergency, also stopped about two to two-and-a-half feet away from the restroom stall and similarly bent to see under the stall door. Troppe also immediately saw that defendant was masturbating. Marks then knocked on the stall door and ordered defendant out. Defendant told the officers that no one should have reported his conduct to the police. Marks and Troppe placed defendant under arrest for public indecency.
Prior to a bench trial, defendant moved to suppress the officers' observations. Defendant argued that he had a right to privacy inside the stall under Article I, section 9, and that the officers significantly impaired that right by bending over at a short distance *404 from the stall to glance into the stall. The trial court denied defendant's motion and, following a bench trial, convicted him of public indecency.
On appeal, defendant reiterates the arguments that he raised at the suppression hearing. We review a trial court's ruling on a motion to suppress evidence for errors of law. State v. Ipsen , 288 Or. App. 395, 398, 406 P.3d 105 (2017). In doing so, "we are bound by the trial court's findings of historical fact that are supported by constitutionally sufficient evidence" in the record. State v. Powell , 288 Or. App. 660, 662, 406 P.3d 1111 (2017).
Under Article I, section 9, "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" A search under that section occurs when the government "invades a protected privacy interest." State v. Brown , 348 Or. 293, 297, 232 P.3d 962 (2010). A "protected privacy interest" refers to the privacy to which one has a "right," not the privacy that one "reasonably expects" under the circumstances. Id . at 298, 232 P.3d 962 (quoting State v. Campbell , 306 Or. 157, 164, 759 P.2d 1040 (1988) (internal quotation marks omitted) ). For that reason, a defendant's subjective expectation of privacy does not determine whether the police have violated a constitutionally protected privacy interest. Id. Rather, "such interests are defined by an objective test that asks whether the government's conduct would significantly impair an individual's interest in freedom from scrutiny, i.e. , *584 his or her privacy." State v. Rodriguez-Ganegar , 186 Or. App. 530, 534, 63 P.3d 1225, rev. den. , 335 Or. 578, 74 P.3d 112 (2003).
The Supreme Court has previously explained that, when persons "conduct themselves in otherwise protected areas in such a way that their words or acts can plainly be seen or heard outside without any special effort," a police officer's unaided observations of that conduct from a lawful vantage point generally should not be suppressed as the product of an unlawful search. State v. Louis , 296 Or. 57, 61, 672 P.2d 708 (1983). In Louis , a police officer photographed the defendant through the defendant's street-level front window using a camera with a modestly enhanced telephoto lens set up in a garage across the street from the defendant's home. Id . at 59, 672 P.2d 708. The photographs depicted the defendant exposing his genitals while standing naked at the window. Id. Other evidence demonstrated that the defendant "could be seen from the neighbor's garage and from the street, without the aid of a telephoto lens." Id. at 60, 672 P.2d 708. The Supreme Court first acknowledged that the defendant's home was "the quintessential domain protected by the constitutional guarantee against warrantless searches." Id . But the court also emphasized that "not everything that police officers see or hear one do in private quarters requires a search warrant." Id. at 61, 672 P.2d 708. Because the defendant's conduct "could be seen and had been seen" from the street with or without a telephoto lens, the court found that the police had not invaded a protected privacy interest, and thus had not conducted a warrantless search under Article I, section 9. Id .
Similarly, in State v. Corra , 88 Or. App. 339, 745 P.2d 786 (1987), rev. den. , 305 Or. 331, 752 P.2d 842 (1988), we concluded that a police officer who stood on a rock to see over a six-foot high fence surrounding the defendant's property and saw the defendant handling marijuana plants in his yard did not engage in an Article I, section 9, search. We first noted that, "[a]lthough defendant had a privacy interest in his backyard, he could not insist that others ignore that which was available to their senses." 88 Or. App. at 342, 745 P.2d 786. We then explained that the officer's "observations of defendant's backyard took only a short time; they were not significantly longer than a neighbor's might be." Id. Finally, we explained *585 that, although the officer who saw the defendant was not tall enough to see over the fence unaided, many people "are tall enough to look over a six-foot high fence without standing on [a] rock; they could have seen what [the officer] saw 'without any special effort.' " Id. (quoting Louis , 296 Or. at 61, 672 P.2d 708 ). We concluded that "[w]e see no constitutional significance in [the officer's] standing on the rock to see what some others could see without standing on it." Id . *405 By contrast, in State v. Casconi , 94 Or. App. 457, 766 P.2d 397 (1988), we found that an unlawful warrantless search had occurred when the police installed a video camera in a public restroom and recorded the defendant masturbating in a doorless toilet stall. We first explained that "[t]he final bastion of privacy is to be found in the area of human procreation and excretion" and, "if a person is entitled to any shred of privacy, then it is to privacy as to those matters." 94 Or. App. at 461, 766 P.2d 397 (quoting Sterling v. Cupp , 44 Or. App. 755, 761, 607 P.2d 206 (1980), aff'd as modified , 290 Or. 611, 625 P.2d 123 (1981) (internal quotation marks omitted) ). We then concluded that "[a]llowing the police to conduct hidden surveillance of a doorless toilet stall significantly impairs freedom from scrutiny." Id . Importantly, the critical factor in our decision that a search had occurred was the "use of the concealed camera" to record the defendant. Id. To emphasize that point, we contrasted State v. Holt , 291 Or. 343, 630 P.2d 854 (1981), in which the Supreme Court concluded that the defendant, whom the police had observed masturbating through a pre-existing hole in a partition dividing two doorless toilet stalls in a public restroom, had no reasonable expectation of privacy "because he committed his acts so that other restroom users could see him."[2] Id. See also State v. Owczarzak , 94 Or. App. 500, 503, 766 P.2d 399 (1988) (police officers conducted a search when they used a hidden camera to surreptitiously surveil a public restroom and observed the defendant masturbating in one of the stalls, because, while "[a] person in a public restroom anticipates *586 that another person might enter and see what is going on," a person does not anticipate "that his activity [in a restroom] will be seen by concealed officers or recorded by concealed cameras").
In each of the cases cited above, our determination of whether the police invaded the defendants' constitutionally protected right to privacy generally turned on whether the police relied on "special efforts" to observe the defendants' conduct in an otherwise protected area. See also State v. Castillo-Salgado , 186 Or. App. 605, 611, 64 P.3d 1169, rev. den. , 336 Or. 60, 77 P.3d 635 (2003) (police officer did not engage in a search when he "observed illegal activity from a lawful vantage point through a three-inch gap in the blinds after his attention was drawn to the interior of the room by movement inside the apartment as he approached the front door" and "took no extraordinary efforts to look into the apartment"); Rodriguez-Ganegar , 186 Or. App. at 537-38, 63 P.3d 1225 (police officer did not engage in a search when he observed, without any "special effort," illegal activity through a three-fourths to one inch vertical gap in the curtains of a motel room window after "his attention happened to be drawn *** by a series of loud noises" from inside the room, and the activity inside the room would have been "plainly visible to any passerby whose attention might be drawn to activities inside the room").
Applying that same analysis to the particular facts of this case, we conclude that defendant did not have a protected privacy interest under Article I, section 9, while lying on the floor of a public restroom stall that had a 12-inch gap between the stall partition and the floor. Marks and Troppe observed defendant's conduct from a lawful vantage point-the common area of a public restroom. The officers were able to see defendant lying on the floor inside the stall upon entering that area. Defendant's prone position instantly drew the officers' attention. From several feet away, Marks and Troppe bent over at the waist to a 90-degree angle, each for a brief moment, to better see defendant under the stall door. Both immediately saw defendant masturbating with his genitals exposed. The officers made no special or extraordinary efforts to see defendant inside the stall. As in Corra , where it was not constitutionally significant that the officer who observed the defendant's criminal behavior *587 happened to be too short to see over a fence that a taller officer or passerby *406 could have seen over unaided, here it is not constitutionally significant that Marks and Troppe happened to be too tall to see under the stall door without bending at the waist. As the trial court found, a shorter adult or a child who entered the restroom would have seen defendant masturbating on the floor without any effort whatsoever.
Nor did the officers' conduct offend social norms or significantly impair defendant's interest in freedom from scrutiny. See Castillo-Salgado , 186 Or. App. at 611, 64 P.3d 1169 (police officer did not conduct a search by inclining his head to peer through blinds on a motel room window, in part because that conduct did not offend social norms). Defendant argues that the officers' conduct violated "social and legal norms." In support, defendant relies primarily on State v. Fortmeyer/ Palmer , 178 Or. App. 485, 37 P.3d 223 (2001). There, we determined that the police violated the defendants' right to privacy after an officer obtained a neighbor's permission to access a common area outside the defendants' residence and observed unlawful activity by kneeling down at the defendants' basement window and peering through a crack between a door panel leaned against the window on the outside of the building and a piece of cardboard covering the window on the inside of the building. In that case, we were particularly persuaded by the fact that the officers made deliberate efforts to overcome the defendants' own obvious and deliberate efforts to prevent their private activity from being viewed. 178 Or. App. at 491-92, 37 P.3d 223 (noting that it was "uncommon" and socially "unacceptable" to kneel down and lean one's head against a window of a private residence to see through a gap in cardboard placed to block off the interior from view). See also State v. Gabbard , 129 Or. App. 122, 126, 877 P.2d 1217, rev. den. , 320 Or. 131, 881 P.2d 815 (1994) (" Article I, section 9, protects a privacy interest in land outside the curtilage of a person's dwelling, if the person manifests an intent to exclude the public by erecting barriers, such as fences or signs.").
By contrast, as the state suggested during the suppression hearing in this case, it is not uncommon that someone entering a public restroom may quickly bend or tilt their head to see if a toilet stall is occupied. Here, the officers' brief *588 glance under the stall door was not "suspicious, uncommon, and unacceptable in our society." See Fortmeyer/Palmer , 178 Or. App. at 492, 37 P.3d 223 (describing that standard). The officers did not look under and up the stall partition but bent at the waist from several feet away. Nor did defendant in this case make any particular effort to conceal his conduct or otherwise ensure his privacy while lying on the floor inside the stall. In fact, although defendant was inside the stall with the door closed, which typically secures a protected right to privacy, he nevertheless exposed himself to the common area of the restroom when he lay down on the floor and, as noted above, someone shorter than Marks and Troppe who entered the restroom could have seen defendant exposing his genitals on the floor inside the stall without bending. As a result, even if defendant may have had a subjective belief that his actions were private because he was in a locked restroom stall, the officers did not objectively impair his interest in being free from scrutiny when they briefly leaned over while in the restroom's common area and saw what another person could have also seen unaided.
In sum, the officers in this case did not engage in a warrantless search when, from several feet away, they briefly leaned over to glance under a stall door in a public restroom after they saw defendant lying on the floor inside the stall. While a person would usually have a constitutionally protected privacy interest while inside a public restroom stall, defendant's conduct on the floor of the stall in this case was visible from the common area of the restroom without any special effort by the officers. Accordingly, defendant did not have a right to privacy considering that he was lying on the floor of the stall in a way in which he was easily seen, and, therefore, the officers' actions that allowed them to observe defendant's behavior was not a search.
Affirmed.

Defendant additionally assigns error to the trial court's denial of his motion for judgment of acquittal. We reject that assignment without further written discussion.

As we noted in Casconi , Holt was decided when the Fourth Amendment to the United States Constitution and Article I, section 9, "were generally regarded in Oregon case law as coextensive." 94 Or. App. at 461, 766 P.2d 397. Although that standard had since changed, we found that Holt 's rationale was "still helpful" in determining whether the police had invaded a protected privacy interest. Id .