NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MICHAEL STEVEN CUNNINGHAM,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13108
Trial Court No. 3AN-16-05903 CR

O P I N I O N

No. 2757 — August 25, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Emily Jura, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Following a bench trial, the superior court found Michael Steven Cunningham guilty of two counts of first-degree indecent exposure based on a single incident. As to the first count, the State alleged that Cunningham was guilty of first-degree indecent exposure because he committed second-degree indecent exposure within

the observation of a person under sixteen years of age and "knowingly masturbate[d]" while committing "the act constituting the offense."[1] As to the second count, the State alleged that Cunningham was guilty of first-degree indecent exposure because he committed second-degree indecent exposure within the observation of a person under sixteen years of age, and he had been previously convicted of a similar crime in Oregon.[2] The superior court merged the two counts into a single conviction, and Cunningham now appeals.

On appeal, Cunningham does not contest the fact that he committed *second-degree* indecent exposure — *i.e.*, that he knowingly exposed his genitals in the presence of another person, with reckless disregard for the offensive, insulting, or frightening effect the act might have.[3] Rather, he raises various challenges to the factors that elevated his offense to first-degree indecent exposure.

As to the count of recidivist indecent exposure, Cunningham argues that the statute under which he was convicted in Oregon does not contain "elements similar" to Alaska's indecent exposure statute, and that he therefore does not have a qualifying prior conviction for the purpose of elevating his offense to first-degree indecent exposure. On this point, we agree with Cunningham.

We must therefore address Cunningham's challenges to the alternative count that requires proof of masturbation. As to this count, Cunningham raises two challenges.

First, Cunningham argues that the superior court erred when it considered an alternative dictionary definition of "masturbation" — a different definition than the

---

[1]   Former AS 11.41.458(a)(1) (2016).

[2]   Former AS 11.41.458(a)(2)(c) (2016).

[3]   AS 11.41.460(a).

one used by the parties in their closing arguments. We agree that the superior court should not have considered an alternative dictionary definition of masturbation after closing arguments without providing notice to the parties and an opportunity to be heard. But we disagree with Cunningham that this caused the superior court to apply a meaningfully different legal test when rendering its verdict, and we therefore find the error harmless.

Second, Cunningham argues that to find him guilty of first-degree indecent exposure under the masturbation theory, the State was required to prove (and the superior court was required to find) that the masturbation was "within the observation of a person under 16 years of age." He further argues that "within the observation of" means that the State was required to prove that the victim actually saw his act of masturbation. For the reasons explained in this opinion, we conclude that the State was required to prove that the indecent exposure was "within the observation of a person under 16 years of age," but that the State was not required to prove that the victim actually saw Cunningham's act of masturbation. Because there was no dispute that a child directly observed Cunningham's act of exposure, we affirm the superior court's guilty verdict on Count I (the masturbation theory), and we affirm Cunningham's conviction.

Cunningham also raises two challenges to his sentence.

First, Cunningham argues that the superior court erred in imposing a lifetime sex offender registration requirement instead of a 15-year registration requirement. The State concedes error on this point. We conclude that the State's concession is well-founded, and we remand for revision of the registration requirement in the judgment.

Lastly, Cunningham argues that the superior court erred in finding an aggravating factor — that, under AS 12.55.155(c)(5), Cunningham "knew or reasonably

should have known that the victim of the offense was particularly vulnerable or incapable of resistence" due to her young age. We conclude that this claim is moot because the court, relying solely on the child's age, ultimately imposed a sentence within the presumptive range.

*Underlying facts and proceedings*

On July 5, 2016, seven-year-old A.C. was at a bookstore in Anchorage when she asked an employee, Michael Steven Cunningham, to show her where the *Harry Potter* books were located. Cunningham walked A.C. to the *Harry Potter* section, and A.C. pulled out several books while Cunningham stood behind her, speaking to her and pointing out books on the shelf. While A.C. was facing the shelf, Cunningham removed his penis from his pants. This incident was captured on one of the bookstore's surveillance cameras.

Over the course of the next two minutes, A.C. can be seen on the surveillance video continuing to look at and read books. During this time, Cunningham remained in close proximity to A.C. and can be seen taking his penis in and out of his pants and manipulating it with his hand. Cunningham was carrying books in his left hand for much of the incident, and at times he used the books to partially shield his penis from view.

At one point, Cunningham can be seen walking toward the camera and past A.C., who at that point was sitting on a stool reading a book. As Cunningham walked past A.C., his penis was fully exposed, and he appeared to be touching his penis with his hand, close to A.C.'s eye level. Cunningham eventually walked out of view of the camera. A.C. then stood up and went to find her mother's friend, the adult who had taken her to the bookstore.

A.C. testified at trial that she saw Cunningham's "privates" and became "worried." She explained that she ultimately told her mother what had happened. A.C.'s mother called the bookstore manager and reported what her daughter had told her. The manager reviewed the store's surveillance video and, after seeing Cunningham expose himself to A.C., the manager contacted the police.

A grand jury indicted Cunningham on two counts of first-degree indecent exposure — first, for committing second-degree indecent exposure within the observation of a person under sixteen years of age and while doing so, knowingly masturbating; and second, for committing second-degree indecent exposure within the observation of a person under sixteen years of age, while having previously been convicted in another jurisdiction of a crime with elements similar to Alaska's second-degree indecent exposure statute.[4] (Cunningham was previously convicted, in a single judgment, of three counts of public indecency under Oregon law.)

Cunningham waived his right to a jury trial and proceeded to a bench trial. The superior court, sitting as fact-finder, found Cunningham guilty of both counts, and the court merged the two counts into a single conviction. The court sentenced Cunningham to 12 years with 8 years suspended (4 years to serve), with a 10-year term of probation. The superior court also imposed a lifetime sex offender registration requirement.

This appeal followed.

---

[4]   Former AS 11.41.458(a)(1), (a)(2)(c) (2016).

*The offense for which Cunningham was convicted in Oregon does not have "elements similar" to Alaska's indecent exposure statute for the purpose of elevating his act of exposure to a felony*

Prior to trial, Cunningham filed a motion to dismiss the count of the indictment charging him with first-degree indecent exposure under a recidivist theory. Cunningham argued that his prior public indecency convictions from Oregon did not have "elements similar" to Alaska's indecent exposure statute because the Oregon statute prohibited a broader scope of conduct compared to the Alaska statute. Cunningham therefore argued that he had not been "previously convicted" for purposes of elevating his act of exposure at the Anchorage bookstore to a felony.[5]

The superior court denied Cunningham's motion. First, the court relied on the facts of Cunningham's prior convictions to conclude that his conduct would support a conviction in Alaska. To reach this conclusion, the court relied on handwritten notations of unknown origin on the Oregon charging document that was introduced at the grand jury proceeding. (These notations were redacted in the exhibits later introduced at trial.[6]) Second, the court concluded that, while the Oregon statute did have broader elements than the Alaska statute, the two statutes were sufficiently similar because, according to the court, the broader language in the Oregon statute only encompassed "a narrow spectrum of unusual cases."[7]

Cunningham now challenges the court's ruling.

---

[5] Former AS 11.41.458(a)(2)(c) (2016).

[6] The Oregon charging document listed four counts of public indecency against Cunningham. (The fourth count of public indecency was ultimately dismissed by the State pursuant to a plea agreement.)

[7] Quoting *Phillips v. State*, 330 P.3d 941, 944 (Alaska App. 2014).

As an initial matter, we agree with Cunningham that the superior court erred in relying on the facts underlying Cunningham's prior convictions to determine whether the Oregon statute had "elements similar" to Alaska's for the purpose of elevating his offense to first-degree indecent exposure. For one thing, these facts were based solely on handwritten notations of unknown origin on the Oregon charging document — notations that were later redacted from the trial exhibits.[8] Moreover, the recidivist theory of first-degree indecent exposure requires a comparison of *statutory elements*: a person must have been previously convicted of indecent exposure in Alaska or a crime in Alaska or another jurisdiction with "elements similar" to one of the Alaska statutes defining indecent exposure.[9]

When interpreting similar language in other statutory contexts, both the Alaska Supreme Court and this Court have applied a categorical approach, analyzing the elements of the two relevant statutes to determine whether an out-of-state statute is "similar" to the Alaska statute. For example, in *State, Dep't of Pub. Safety v. Doe*, the supreme court analyzed whether an out-of-state conviction qualified as an offense subject to sex offender registration in Alaska.[10] The supreme court interpreted statutory language that read, "a similar law of another jurisdiction," as requiring a comparison of "the elements of the [out-of-state] statute of conviction to the elements of the allegedly similar Alaska statute," without reference to the underlying facts.[11] We have employed

---

[8] *Cf. Morgan v. State*, 523 P.3d 1254, 1259 (Alaska App. 2023) (recognizing that the State cannot rely on factual allegations in the probable cause statement in a complaint to establish what subsection of a statute the defendant was later convicted of).

[9] Former AS 11.41.458(a)(2)(c) (2016).

[10] *State, Dep't of Pub. Safety v. Doe*, 425 P.3d 115 (Alaska 2018).

[11] *Id.* at 119-20 (holding that the Alaska Sex Offender Registration Act "requires a
(continued...)

a comparable analysis in determining whether an out-of-state statute of conviction is "similar" to an Alaska statute for purposes of presumptive sentencing.[12]

Applying this analysis, we conclude that the Oregon public indecency statute does not have "elements similar" to Alaska's indecent exposure statute. At the time of Cunningham's offense, the Oregon statute provided:

> (1) A person commits the crime of public indecency if while in, or in view of, a public place the person performs:
>
> (a) An act of sexual intercourse;
>
> (b) An act of deviate sexual intercourse; or
>
> (c) An act of exposing the genitals of the person with the intent of arousing the sexual desire of the person or another person.[13]

Cunningham was convicted under subsection (1)(c).[14] That is, Cunningham was

---

[11]  (...continued)
comparison of laws" to determine whether the out-of-state conviction was based on a "similar law" to Alaska).

[12]  *Borja v. State*, 886 P.2d 1311, 1314 (Alaska App. 1994); *see also State v. Delagarza*, 8 P.3d 362, 366-68 (Alaska App. 2000).

[13]  Former Or. Rev. Stat. § 163.465 (2015). The statute has since been amended to delete "[a]n act of deviate sexual intercourse" and include "[a]n act of oral or anal sexual intercourse" and "[m]asturbation." *See* Or. Rev. Stat. § 163.465.

[14]  Cunningham's Oregon judgment does not specify which subsection supports each of his convictions. However, the Oregon complaint charged Cunningham with violating subsection (1)(c) — "unlawfully and with [the] intent of arousing the sexual desire of defendant or another person, expos[ing] his genitals while in or in view of a public place" — on three different dates. And in his petition to enter a guilty plea, Cunningham wrote the following, as to each of the dates: "I unlawfully and with the intent of arousing the sexual desire of myself exposed my genitals in view of a public place."

Under the modified categorical approach to comparing statutes, if the statute of

(continued...)

convicted of exposing his genitals while in, or in view of, a public place, with the intent of arousing himself or another person.[15] Under the Oregon statute, "public place" is broadly defined as "a place to which the public has access," including "hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence."[16]

As Oregon courts acknowledge, Oregon's public indecency statute is focused on the harm to the public, and is not a victim-centric crime.[17] There is no requirement of another person's "presence"; rather, a person exposing themselves need only be in, or in view of, a public place.[18]

---

[14] (...continued)
conviction is divisible into alternative sets of elements, a court may look to certain court records in the out-of-state case — documents such as jury instructions, a plea agreement and colloquy, and the judgment — for the limited purpose of determining the statutory subsection under which the defendant was previously convicted. *Doe*, 425 P.3d at 123 & n.34 (adopting the modified categorical approach with respect to the determination of whether a person with a prior out-of-state conviction must register as a sex offender in Alaska); *see also Morgan v. State*, 523 P.3d 1254, 1259 (Alaska App. 2023).

[15] *See* former Or. Rev. Stat. § 163.465(1)(c) (2015); *see also State v. Gialloreto*, 457 P.3d 1105, 1111 (Or. App. 2019).

[16] Former Or. Rev. Stat. § 161.015(10) (2015).

[17] *See Gialloreto*, 457 P.3d at 1112 (concluding that charges of, *inter alia*, rape and public indecency were improperly joined, noting that "the offense of public indecency does not require a victim"); *State v. Van Hoomissen*, 866 P.2d 521, 522 (Or. App. 1994) ("[T]he crime of public indecency is committed against the public at large, not against the person who incidently witnessed the act, and, accordingly, . . . it is not subject to civil compromise." (discussing *State v. Dugger*, 698 P.2d 491 (Or. App. 1985))).

[18] *See, e.g.*, *State v. Louis*, 672 P.2d 708, 709 (Or. 1983) (en banc) (defendant was convicted of three counts of public indecency after the police, investigating a citizen's complaint that a neighbor had been exposing himself through the window of his own home, (continued...)

In contrast, Alaska's indecent exposure statute is victim-focused. Under Alaska's second-degree indecent exposure statute, a person commits indecent exposure if the person "knowingly exposes [their] genitals in the presence of another person[,] with reckless disregard for the offensive, insulting, or frightening effect the act may have."[19] Thus, unlike the Oregon statute, Alaska's statute requires another person's "presence" and is focused on the possible negative impact of the defendant's conduct on others. Alaska's first-degree indecent exposure statute is similarly victim-focused and, at the time of Cunningham's offense, elevated the base-level crime to a felony if the indecent exposure occurred before a person under sixteen years old and the defendant knowingly masturbated or had been previously convicted.[20]

As this Court has previously explained, when analyzing whether an out-of-state statute is similar to an Alaska statute, the question is not simply whether the out-of-state statute reaches a broader range of conduct than the Alaska statute.[21] Rather, the question is "whether the difference is significant enough to place the statute outside the

---

[18]  (...continued)
used a camera with a telephoto lens to photograph the defendant exposing his genitals through the window).

[19]  AS 11.41.460(a). Although the recidivist provision of the first-degree indecent exposure statute provides that any out-of-state prior conviction must have elements similar to either Alaska's first- or second-degree indecent exposure statute, Cunningham acknowledges that, for all practical purposes, a prior out-of-state conviction must be similar to second-degree indecent exposure under AS 11.41.460(a) because that offense is broader than first-degree indecent exposure.

[20]  Former AS 11.41.458 (2016). The legislature has since amended the first-degree indecent exposure statute to make indecent exposure before an adult a felony under certain circumstances. AS 11.41.458 (as amended by FSSLA 2019, ch. 4, § 15).

[21]  *Phillips v. State*, 330 P.3d 941, 944 (Alaska App. 2014).

Alaska Legislature's definition of a 'similar' offense."[22]  Alaska's first-degree indecent exposure statute contains elements sufficiently distinct from the Oregon statute to disqualify Cunningham's prior convictions from elevating his offense to a felony under AS 11.41.458.[23]

The State argues that the core prohibited conduct of both statutes is nevertheless "similar," and the State points to various Oregon cases involving conduct prosecuted under Oregon's public indecency statute that would also be covered by Alaska's indecent exposure statute.[24]

---

[22]  *Id.*; *see also Scroggins v. State*, 951 P.2d 442, 444 (Alaska App. 1998) (holding that a California statute was sufficiently dissimilar from the corresponding Alaska statutes because the Alaska statutes were "considerably narrower" than California's statute).

[23]  *Compare Timothy v. State*, 90 P.3d 177, 180-81 (Alaska App. 2004) (holding that the Illinois and Oklahoma burglary statutes, which criminalized unlawful entries in *any* motor vehicle, were not sufficiently similar to Alaska's burglary statute, which covered "only those comparatively few vehicles that are adapted for overnight accommodation or for carrying on business"), *and Scroggins*, 951 P.2d at 444 (holding that Alaska's sexual abuse of a minor statutes were not sufficiently similar to California's statute because, while the California statute prohibited "the touching of *any* body part of the child," the Alaska statutes focused on specific parts of the body), *with Phillips*, 330 P.3d at 944-45 (holding that the Texas prohibition on driving under the influence was "similar" to Alaska's statute because, while the Texas statute encompassed intoxication by "any substance," few Texas offenders were actually intoxicated by a non-controlled substance), *and State v. Simpson*, 53 P.3d 165, 170 (Alaska App. 2002) (holding that Montana's driving under the influence statute was sufficiently similar to Alaska's statute, even assuming the defense of involuntary intoxication is not available to a Montana driver, as it is to an Alaska driver, since "instances of involuntary intoxication are rare" and thus "any purported difference . . . would apply only to a narrow spectrum of unusual cases").

[24]  *See, e.g.*, *State v. Althouse*, 375 P.3d 475, 483 (Or. 2016) (defendant exposed himself on the side of a popular jogging path, near a middle school); *State v. Davidson*, 380 P.3d 963, 965-66 (Or. 2016) (defendant masturbated in a school playground, in a parking lot, and in a public park in the presence of others, among other things); *State v. Hawkins*, 380 P.3d 979,

(continued...)

We agree that there is overlap between the conduct criminalized by both statutes. But multiple appellate cases in Oregon involve convictions for public indecency that occurred outside the presence of another person or with a willing participant, and therefore could not be prosecuted under Alaska's indecent exposure statute. Several cases involved men who were discovered by officers either alone or with a consenting partner, masturbating in a public restroom.[25] And one case involved a bus driver who was discovered receiving oral sex from another person in the back of a public bus.[26]

---

[24] (...continued)
980 (Or. App. 2016) (defendant exposed his genitals while masturbating on public transportation); *State v. Smith*, 372 P.3d 549, 551 (Or. App. 2016) (defendant held penis and appeared to be masturbating in public park); *State v. Collins*, 300 P.3d 238, 240-41 (Or. App. 2013) (driver on highway exposed genitals and masturbated while pulling up alongside car with children); *State v. Sills*, 317 P.3d 307, 308 (Or. App. 2013) (defendant exposed himself to a thirteen-year-old girl who was walking home from the school bus stop); *State v. Dugger*, 698 P.2d 491, 492 (Or. App. 1985) (en banc) (defendant publicly exposed himself in a department store).

[25] *State v. Wilson*, 422 P.3d 402, 403 (Or. App. 2018) (defendant convicted of public indecency after police officers "glanced under a partition of a public restroom stall and saw defendant lying on the floor masturbating"); *State v. Casconi*, 766 P.2d 397, 398-99 (Or. App. 1988) (defendant convicted of public indecency for masturbating in a public bathroom stall where "[n]o one in the restroom saw defendant expose his genitals or masturbate," but where he was caught on surveillance recording; court reversed as illegal warrantless search); *State v. Holt*, 630 P.2d 854, 856 (Or. 1981) (defendant convicted of public indecency after an officer observed him masturbating in a public restroom stall which had no doors; the court noted that "130 arrests" had been made by one officer at that restroom "in less than three months of surveillance"); *State v. Owczarzak*, 766 P.2d 399, 400-01 (Or. App. 1988) (defendant convicted of public indecency after he was captured on surveillance recording masturbating in front of another person in a public restroom in what appeared to be consensual conduct; court reversed as illegal warrantless search under state constitution).

[26] *State v. Sullivan*, 952 P.2d 100, 101-02 (Or. App. 1998). Indeed, Oregon's public indecency statute is, in some ways, more akin to disorderly conduct under the Anchorage

(continued...)

Contrary to the superior court's reasoning, these cases comprise more than "a narrow spectrum of unusual cases."

For these reasons, we conclude that Oregon's public indecency statute does not have "elements similar" to Alaska's indecent exposure statutes, and Count II must be dismissed.[27] We accordingly proceed to address Cunningham's challenges to Count I.

*The superior court's reliance on a second dictionary definition of "masturbation" does not constitute reversible error*

To prove that Cunningham committed the crime of first-degree indecent exposure under Count I, the State was required to prove, *inter alia*, that Cunningham masturbated. As we have explained, Cunningham waived his right to a jury trial, and proceeded to a bench trial. Prior to trial, the parties agreed on an instruction delineating the elements of the offense, but they did not discuss the need for any other instructions, including a definition of "masturbation."

Following the close of evidence, the parties submitted written closing arguments. In the State's closing argument, the prosecutor noted that the term "masturbate" is not defined by statute, and argued that the court should therefore adopt

---

[26] (...continued)
Municipal Code, which prohibits a person from "knowingly engag[ing] in consensual sexual penetration . . . in a public place or a place reasonably exposed to public view." AMC 08.30.120(A)(1).

[27] We note that Oregon also has a second crime, entitled "private indecency," which more closely resembles Alaska's indecent exposure statute: it criminalizes exposing one's genitals in view of another person, when that exposure "reasonably would be expected to alarm or annoy the other person," and the perpetrator knew the other person did not consent. (The crime is narrower than Alaska's indecent exposure statute, in that it must occur in "a place where another person has a reasonable expectation of privacy" and the perpetrator must intend to arouse their own or another person's sexual desire.) *See* Or. Rev. Stat. § 163.467(1).

the reasonable, common sense meaning of the word. The prosecutor then referenced the following definition of "masturbation" from Merriam-Webster.com: "the erotic stimulation especially of one's own genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse." Applying that definition, the prosecutor argued that Cunningham masturbated because the surveillance video revealed that he "exposed his penis and then manually stimulated himself with his hand."

In his closing argument, Cunningham's attorney accepted the State's definition of masturbation, but argued that the video did not show him masturbating. Instead, the attorney argued that Cunningham was only adjusting the position of his penis for other purposes — either so A.C. would see his penis, or so other bookstore patrons would not.

After reviewing the parties' written closing arguments, the superior court concluded that Cunningham was masturbating. In reaching this conclusion, the court recognized the parties' definition but consulted and applied a different dictionary definition than the one discussed by the parties — a definition from the Third College Edition of *Webster's New World Dictionary*: "to manipulate one's own genitals or the genitals of another for sexual gratification." Relying on this definition, the court made the following oral findings in support of its conclusion that Cunningham was masturbating:

> So there — it's essentially any manipulation, and there was
> clearly manipulation by Mr. Cunningham of his genitals. It
> wasn't simply [an] exposure and nothing more. There was
> clearly manipulation. And so I — and also, you know, the
> statement that Mr. [Cunningham] had made on the recording
> that he was on probation from Oregon for indecent exposure.
> He said — essentially he said I lost my mind as an adrenaline
> thrill sort of kind of thing and it would happen in stores. I

showed — he said he showed it to kids. He said I lost my mind, I'd been a pedophile all of my life since [becoming] sexually aware at age 12 or 15, and he stated that I find small girls — small — or smaller young girls attractive. So I find that the State has proven that charge beyond a reasonable doubt[.]

After the court issued its oral findings, Cunningham's attorney requested written findings under Alaska Criminal Rule 23(c). The court later issued its written findings, in which the court again applied its alternative definition of masturbation and concluded that Cunningham had been masturbating. In its written findings, the court also agreed with the State's assertion that Cunningham "exposed his penis and then manually stimulated himself with his hand." The court further concluded that Cunningham "very clearly did more than simply expose himself."

Cunningham's trial attorney did not object to the superior court's reliance on a second dictionary definition. On appeal, however, Cunningham argues that it was improper for the court to adopt and apply a different definition than the one used by the parties without first notifying them of its intent to do so and giving them an opportunity to object.

We agree with Cunningham that, as a general matter, it was improper for the court to adopt an alternative definition of "masturbation" without providing notice to the parties and an opportunity to be heard. But we disagree that this error requires reversal of his conviction.

Alaska Rule of Criminal Procedure 30(a) states that the trial court "shall inform counsel of the final form of jury instructions prior to their arguments to the jury" and requires that the court give both parties an opportunity to object to those instructions. Jurors are also instructed not to consult dictionaries and other outside reference materials during their deliberations. The purpose of these rules is to allow the parties to litigate,

prior to closing argument, the precise law under which the jury will decide the case, which in turn allows the parties to tailor their arguments to the language of the instructions.[28]  Basic principles of due process and fairness require this approach.

Although these rules are specifically directed at jury trials, the underlying principles are equally applicable to bench trials.  It was therefore improper for the superior court to use a different definition than the one agreed upon by the parties, without first informing the parties about this decision and giving them an opportunity to object.

That said, reversal of Cunningham's conviction is only required if the alternative definition of "masturbation" changed the legal test the court applied to the case.[29]  After reviewing the parties' arguments and the court's oral and written rulings, we conclude that it did not.

The dictionary definition ultimately consulted by the superior court was not meaningfully different from the definition agreed to by the parties in their closing arguments.  Both definitions require that the person touch their genitals for an erotic or sexual purpose, and neither defines in precise terms the manner or nature in which this touching must occur.

Despite these apparent similarities, Cunningham argues that the definition adopted by the superior court improperly allowed the court to find that he was masturbating if he engaged in any touching of his genitals, even touching that was done

---

[28]  *See Riley v. State*, 515 P.3d 1259, 1265 (Alaska App. 2022) (citations omitted).

[29]  *Cf. Bowers v. State*, 2 P.3d 1215, 1221 (Alaska 2000) (holding that the trial court erred in giving a supplemental jury instruction allowing the jury to find the defendant guilty on an alternative theory of culpability on which the State had indicated it would not rely, but still requiring the defendant to show how the new instruction "created a potential for prejudice"); *see also Price v. State*, 590 P.2d 419, 420 (Alaska 1979) (applying harmless error analysis in the context of a bench trial).

only to adjust the position of his penis or move it in order to avoid detection, as long as the underlying act of exposure was sexually motivated.

We agree with Cunningham that the term "masturbation," as used in the first-degree indecent exposure statute, requires more than the touching incidental to exposing oneself, even if the underlying act of exposure is erotic or sexually gratifying for the defendant. To conclude otherwise would collapse the act of exposure for purposes of second-degree indecent exposure with the act of masturbation that elevates the base-level crime to a felony. Such a construction is therefore contrary to the statutory scheme.

We disagree, however, with Cunningham's assertion that the superior court found that Cunningham was masturbating simply because (1) Cunningham touched his penis, and (2) Cunningham's underlying act of exposure was sexually gratifying for him.

Cunningham focuses primarily on the court's comment in its oral ruling that masturbation includes "essentially any manipulation and there was clearly manipulation by Mr. Cunningham of his genitals." But this overlooks the context in which the court made these remarks and also the court's written findings.

In its oral ruling, the court found that Cunningham's conduct was not "simply [an act of] exposure and nothing more. There was clearly manipulation." This suggests that the court was distinguishing between genital touching incidental to the act of exposure and genital touching for the purpose of sexual gratification.

Moreover, in the superior court's written findings, the court adopted the description of the facts contained in the State's written closing argument. That description included the fact that Cunningham "exposed his penis and then manually stimulated himself with his hand." In other words, the superior court found that after Cunningham exposed himself, he continued to manipulate his penis for purposes of sexual stimulation and not solely in order to adjust its position or to avoid detection. The

court also found that Cunningham "very clearly did more than simply expose himself." The court found that Cunningham was "manipulating his penis," and the court relied on his admissions to the police as circumstantial evidence that he was doing so for sexual gratification.

These findings are well supported by the record, which includes a copy of the video recording from the bookstore's surveillance camera. We have reviewed the video recording, and it supports the court's finding that Cunningham's actions included genital touching that went beyond the touching incidental to the act of exposure.

For these reasons, we conclude that, while the superior court erred when it consulted an alternative dictionary definition of "masturbation" and relied on that definition without informing the parties, this error does not require reversal of Cunningham's conviction.

*The first-degree indecent exposure statute does not require proof that the child saw the defendant's act of masturbation*

At the time of Cunningham's offense, Alaska's first-degree indecent exposure statute provided, in pertinent part:

> An offender commits the crime of indecent exposure in the first degree if the offender violates AS 11.41.460(a) [the second-degree indecent exposure statute], the offense occurs within the observation of a person under 16 years of age, and . . . while committing the act constituting the offense, the offender knowingly masturbates[.][30]

---

[30] Former AS 11.41.458(a)(1) (2016).

The phrase "within the observation of" is not specifically defined by statute, and Alaska courts have not previously determined whether "within the observation of" means actual observation, or within one's ability to observe.[31]

On appeal, Cunningham argues that the offense of first-degree indecent exposure requires that the masturbation be "within the observation of a person under 16 years of age" and he further argues that "within the observation of" requires proof that the child victim specifically saw the act of masturbation. Thus, according to Cunningham, we must reverse his conviction because the superior court never made an explicit finding that A.C. saw Cunningham masturbate.

We agree that the court never explicitly ruled on this question. While the superior court found that "the events were *within [A.C.'s] observation*" (emphasis added), the court did not explain whether it found that A.C. *actually saw* Cunningham's act of masturbation (or whether Cunningham's act of masturbation was simply within her range of observation), and it did not address whether actual viewing of the masturbation is required by the statute.

Cunningham's argument therefore raises two distinct questions of statutory interpretation. The first question is the meaning of the phrase "within the observation of." If this phrase means, as the State argues, that the victim only has to be within the "observational range" of the defendant's conduct, then the victim would not need to actually witness the defendant's act of masturbation. Even assuming the phrase "within

---

[31]    *See Jerry B. v. Sally B.*, 377 P.3d 916, 926 n.33 (Alaska 2016) ("Neither we nor the court of appeals has ever evaluated whether 'within the observation' means 'observation range' or 'actual observation,' and the pattern jury instruction's use note explicitly highlights the lack of clarity on this issue and takes no position on 'whether the child . . . must observe the act of masturbation.'" (citing Alaska Criminal Pattern Jury Instruction AS 11.41.458 (rev. 2009))).

the observation of" means "actual observation," the second question is whether this phrase modifies only the act of exposure or also the act of masturbation.

After close consideration of the statute and the legislative history of the statute, we conclude that we need not decide the first question because — regardless of whether "within the observation of" means actual observation — this phrase does not apply to the act of masturbation, but only to the act of exposure.

*Overview of the legislative history related to the initial enactment of the indecent exposure statutes*

The legislature enacted Alaska's indecent exposure statute in 1983.[32] Using language from the disorderly conduct statute, the new indecent exposure statute criminalized the act of "intentionally expos[ing] the offender's genitals to another person with reckless disregard for the offensive, insulting, or frightening effect the act may have on that person."[33] The legislature split the classification of the new offense into two different levels based on the age of the victim: "Indecent exposure *before* a person under 16 years of age is a class A misdemeanor. Indecent exposure *before* a person 16 years of age or older is a class B misdemeanor."[34] (This language still exists in the second-degree indecent exposure statute today.[35]) The sectional analysis for this amendment stated the following: "This section raises the classification of Indecent Exposure to an

---

[32]   SLA 1983, ch. 78, § 4.

[33]   *Id.*; Commentary and Sectional Analysis for C.S.S.B. 74, Senate Jud. Comm., Senate Bill 74 (1983), at 3; Commentary and Sectional Analysis for the Proposed 1983 Amendments to Alaska's Laws Relating to Sexual Assault and Sexual Abuse of a Minor, Senate Health, Educ. & Soc. Serv. Comm., Senate Bill 74 (1983), at 5.

[34]   SLA 1983, ch. 78, § 4 (emphasis added).

[35]   AS 11.41.460(b).

A misdemeanor level if the *object of* the exposure is a child under the age of 16. The offense remains a B misdemeanor if the *witness* to the exposure is an adult."[36]

In 1998, the legislature separated the crime of indecent exposure into two offenses — first- and second-degree indecent exposure.[37] Under these new statutes, a person committed first-degree indecent exposure if:

> (1) the offender violate[d] AS 11.41.460(a) [the second-degree indecent exposure statute];
>
> (2) while committing the act constituting the offense, the offender knowingly masturbate[d]; and
>
> (3) the offense occur[red] within the observation of a person under 16 years of age.[38]

This new offense had the effect of elevating indecent exposure "within the observation of" a person under sixteen years old to a felony if the defendant "knowingly masturbated" while committing the act constituting the offense.

But the legislature did not use the term "before," as it had in delineating the different levels of penalties based on age in the original indecent exposure statute. Instead, under the new first-degree indecent exposure statute, a person committed first-degree indecent exposure if the offense occurred "*within the observation* of a person under 16 years of age."[39]

---

[36] Commentary and Sectional Analysis for the Proposed 1983 Amendments to Alaska's Laws Relating to Sexual Assault and Sexual Abuse of a Minor, Senate Health, Educ. & Soc. Serv. Comm., Senate Bill 74 (1983), at 6 (emphasis added); *see also* Commentary and Sectional Analysis for C.S.S.B. 74, Senate Jud. Comm., Senate Bill 74 (1983), at 3.

[37] SLA 1998, ch. 81, §§ 3, 4.

[38] Former AS 11.41.458(a) (1998).

[39] *Id.* (emphasis added).

At this same time, the legislature also amended the language of the original indecent exposure statute and recodified it as second-degree indecent exposure. In particular, the legislature replaced the phrase "intentionally exposes the offender's genitals *to* another person" to "knowingly exposes the offender's genitals *in the presence of* another person[.]"[40] The legislature also removed the requirement that the exposure be directed at a particular person, by removing "on that person" from the phrase "with reckless disregard for the offensive, insulting, or frightening effect the act may have *on that person*."[41] Thus, under the new statute, a person committed second-degree indecent exposure if the person "knowingly expose[d] [their] genitals in the presence of another person with reckless disregard for the offensive, insulting, or frightening effect the act may have."[42]

The phrases "within the observation of" and "in the presence of" were therefore adopted in the same bill, Senate Bill 323.[43] Although the use of different phrases in each of the statutes would typically suggest disparate meanings, there are a number of indications in the legislative history that the legislature considered "within the observation of" to be equivalent to "in the presence of."

For example, when Senator Drue Pearce, the sponsor of Senate Bill 323,[44] requested a hearing before the House Judiciary Committee, she noted that the bill would "strengthen the penalties for sexual offenses against a child, such as . . . masturbation

---

[40] SLA 1998, ch. 81, § 4 (emphasis added).

[41] *Id.* (emphasis added).

[42] AS 11.41.460(a).

[43] SLA 1998, ch. 81, §§ 3, 4.

[44] *See* 1998 Senate Journal 2529.

*within the presence of a child*[.]"[45]  At that point, the phrase "within the observation of" was already part of the draft statutory language for first-degree indecent exposure.[46]

In addition, in the House Judiciary Committee files, there is a table entitled, "Senate Bill 323 Comparison."[47]  The table provides an overview of the offenses addressed in the bill.[48]  First-degree indecent exposure is described in the table as occurring if the "offender masturbates *within the presence of* a person under 16 years."[49]

There are multiple other examples of the legislature using variations of these phrases interchangeably.[50]  In supplemental briefing on the meaning of this

---

[45]  Memorandum from Sen. Drue Pearce to Rep. Joe Green, House Jud. Comm., regarding Senate Bill 323 (Mar. 31, 1998) (emphasis added).

[46]  S.B. 323, 20th Leg., 2d Sess., § 3 (as introduced, Feb. 16, 1998).

[47]  Senate Bill 323 Comparison, House Jud. Comm., Senate Bill 323 (modified Apr. 28, 1998).

[48]  *Id.*

[49]  *Id.* (emphasis added).

[50]  *See, e.g.*, Audio of House Fin. Comm., Senate Bill 323, testimony of Kristie Tibbles, legislative assistant to Sen. Drue Pearce, at 56:20-56:30 (May 5, 1998) (stating that Senate Bill 323 would make it a felony offense if the offender "masturbates *in front of* a minor") (emphasis added).  Additionally, the phrase "in the presence of" was not added to the second-degree indecent exposure statute until the bill reached the House Finance Committee, which was after the legislature had repeatedly used multiple similar phrases without distinguishing among them.  *Compare* S.B. 323, 20th Leg., 2d Sess. (as introduced, Feb. 16, 1998), *with* H.C.S. C.S.S.B. 323, 20th Leg., 2d Sess. (as introduced by House Fin. Comm., May 7, 1998); *see also* Amendment #1 offered in the House Fin. Comm., Reps. Kelly & Berkowitz, Senate Bill 323 (May 5, 1998).  Lastly, the legislature proposed Senate Bill 272 two weeks before it proposed Senate Bill 323.  Senate Bill 272 included the same language as Senate Bill 323 — that an offender commits first-degree indecent exposure if the offense occurs "*within the observation* of a person under 16 years of age."  S.B. 272, 20th Leg., 2d Sess., § 8 (as introduced, Feb. 2, 1998) (emphasis added).  This bill was accompanied by a table, which

(continued...)

– 23 –                                                2757

legislative history, both Cunningham and the State agree that the legislature used the two phrases — "within the observation of" and "in the presence of" — interchangeably and that we should assign the same meaning to both phrases.

The parties, however, are not in agreement as to *what* meaning should be assigned to these two phrases. Cunningham argues that we should interpret both phrases as requiring an element of direct observation by the victim. The State argues that we should interpret both phrases as only requiring proximity to the exposure and the masturbation — *i.e.*, that the defendant's conduct was within the *observational range* of the victim, even if the victim did not observe the defendant's genitals or his act of masturbation.

The State's view more closely aligns with the common law understanding of the crime of indecent exposure, which remains in force in some jurisdictions.[51] Generally, under the common law, the crime of indecent exposure did not require actual observation of a person's genitals; rather, "[a]t common law, the elements of indecent exposure were the willful exposure of the person in a public place in the presence of

---

[50]   (...continued)
stated that the proposal "[c]reates felony indecent exposure for [a] sex act *in [the] presence* of a child." Child Protection Bill Comparison, Senate Jud. Comm., Senate Bill 272 (1998) (emphasis added).

[51]   Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, at 473 (3d ed. 1982) ("Indecent exposure of the person to public view is also a common-law misdemeanor."); *State v. Whitaker*, 793 P.2d 116, 118 (Ariz. App. 1990) ("Indecent exposure and particular acts and forms of lewdness or gross indecency with respect to sexual relations constituted criminal offenses at common law.").

others."[52]   The government generally had to prove that the public exposure "was observed, or *was likely to have been observed*, by one or more persons."[53]

Some states have construed statutes similar to Alaska's in a like manner. These courts have generally concluded that a person need not actually see the defendant's exposed genitals, although the State must prove more than mere proximity.

---

[52]   *Whitaker*, 793 P.2d at 118; *see also* 3 Jens D. Ohlin, *Wharton's Criminal Law* § 52:17, at 547-48 (16th ed. 2021) ("At common law, the 'indecent exposure' of the private parts of a person to public view was treated as a nuisance and punishable as a misdemeanor.  It was not required that the exposure be observed; it was necessary merely that the exposure occur in a public place.").

[53]   *See Wisneski v. State*, 921 A.2d 273, 279-85 (Md. App. 2007) (emphasis added) (reviewing cases from other jurisdictions construing the common law and interpreting Maryland's common law crime of indecent exposure as requiring a public exposure that "was observed, or was likely to have been observed, by one or more persons"); *Noblett v. Commonwealth*, 72 S.E.2d 241, 244 (Va. 1952) (recognizing that, under the common law crime of indecent exposure, the question was whether the person exposing their genitals "could reasonably have been seen, or was likely to have been seen, by persons using the street"); *People v. Vronko*, 579 N.W.2d 138, 142 (Mich. App. 1998) ("[T]here is no requirement that the defendant's exposure actually be witnessed by another person to constitute 'open or indecent exposure,' as long as the exposure occurred in a public place under circumstances in which another person might reasonably have been expected to observe it."); *see also People v. Carbajal*, 8 Cal.Rptr.3d 206, 211-12, 114 Cal.App.4th 978, 986 (Cal. App. 2003) ("Our review of the common law and cases from other jurisdictions leads us to conclude that a conviction for indecent exposure . . . requires evidence that a defendant actually exposed his or her genitals in the presence of another person, but there is no concomitant requirement that such person actually must have seen the defendant's genitals.  Thus, we will uphold defendant's conviction for indecent exposure in the absence of evidence of any direct visual observation of his genitals so long as there is sufficient circumstantial evidence to show that actual exposure occurred."); *Young v. State*, 849 P.2d 336, 343 (Nev. 1993) ("[I]ndecent exposure of one's genitals was punishable at common law without regard to whether the exposure was observed, or observed by a consenting adult, as long as the exposure occurred in a public place.").

That is, the State must show a *reasonable probability or likelihood* that another person would see the defendant's genitals.[54]

At the same time, the use of phrases like "witness" and "viewer" at points in the legislative history of Alaska's statutes suggest that actual observation is required.[55] And Alaska's statute has departed from the common law in other ways. Under some circumstances, indecent exposure is a felony sex offense[56] — rather than a lower-level crime against public morality and decency, as under common law.[57] Further, the second-degree indecent exposure statute requires exposure of the defendant's genitals "with

---

[54]  *See, e.g.*, *State v. Stevenson*, 656 N.W.2d 235, 239 (Minn. 2003) (recognizing that the phrase "in the presence of a minor" in the state's fifth-degree sexual conduct statute, while necessarily broader than "actually viewed," could mean either "in the proximity of a minor" or "reasonably capable of being viewed by a minor," and adopting the latter (narrower) definition under the rule of lenity); *State v. Vars*, 237 P.3d 378, 382 (Wash. App. 2010) ("Simply because [the statute] requires an exposure of genitalia in the presence of another, it does not mean that the other person must observe the defendant's private parts for an indecent exposure to have occurred. . . . So long as an obscene exposure takes place when another is present and the offender knew the exposure likely would cause reasonable alarm, the crime has been committed.").

[55]  *See* Commentary to Alaska's Revised Criminal Code, 1978 Senate Journal Supp. No. 47 (June 12), at 96 (noting that the exposure provision of the disorderly conduct statute would not apply if the "viewer" consented to the conduct); Commentary and Sectional Analysis for the Proposed 1983 Amendments to Alaska's Laws Relating to Sexual Assault and Sexual Abuse of a Minor, Senate Health, Educ. & Soc. Serv. Comm., Senate Bill 74 (1983), at 6 (providing that the offense of indecent exposure is a class B misdemeanor if the "witness" to the exposure is an adult). As a practical matter, in 1983, the absence of modern-day video cameras likely meant that viewing was often necessary to establishing criminal liability.

[56]  AS 12.55.185(16) (defining "sexual felony" as including first-degree indecent exposure).

[57]  *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, at 473 (3d ed. 1982).

reckless disregard for the offensive, insulting, or frightening effect the act may have,"[58] as opposed to the common law, which required the "willful exposure" in a public place "in the presence of others."[59]

To the extent there is any lingering ambiguity in the meaning of the disputed phrases, the rule of lenity would require us to adopt Cunningham's proposed interpretation — that both phrases require an element of observation.[60]

Ultimately, we conclude, however, that it is unnecessary in this case to decide whether "within the observation of" means actual observation or observational range. Even assuming that the phrase means "actual observation," we disagree with the underlying premise of Cunningham's argument — that the masturbation specifically (as opposed to the exposure of the genitals in general) must be seen. Rather, we agree with the State that, to prove the crime of first-degree indecent exposure, the State must establish only that the defendant masturbated while committing the continuing offense of indecent exposure, and that the victim does not need to personally witness the act of masturbation (although as a practical matter, observation will often be required to prove the offense).

*Why we conclude that proof that the child actually saw the act of masturbation is not required*

In interpreting a statute, we examine *de novo* "the meaning of the statute's language, its legislative history, and its purpose" in light of "reason, practicality, and

---

[58] AS 11.41.460(a).

[59] *See State v. Whitaker*, 793 P.2d 116, 118 (Ariz. App. 1990).

[60] *See State v. Andrews*, 707 P.2d 900, 907 (Alaska App. 1985) ("Ambiguities in criminal statutes must be narrowly read and construed strictly against the government.").

common sense."[61] Alaska employs a "sliding scale" approach to statutory interpretation; under this approach, "the plainer the statutory language is, the more convincing the evidence of a contrary legislative intent must be."[62]

The version of AS 11.41.458 under which Cunningham was convicted was enacted in 2005 and provided:

> (a) An offender commits the crime of indecent exposure in the first degree if the offender violates AS 11.41.460(a) [second-degree indecent exposure], the offense occurs within the observation of a person under 16 years of age, and
>
> > (1) while committing the act constituting the offense, the offender knowingly masturbates; or
> >
> > (2) the offender has been previously convicted under
> >
> > > (A) this section [*i.e.*, AS 11.41.458];
> > >
> > > (B) AS 11.41.460(a); or
> > >
> > > (C) a law or ordinance of this or another jurisdiction with elements similar to a crime listed under (A) or (B) of this paragraph.
>
> (b) Indecent exposure in the first degree is a class C felony.[63]

Based on the plain language of the statute, "the offense" that must "occur[] within the observation of a person under 16 years of age" is the predicate offense of second-degree indecent exposure. That is, "within the observation of" does not modify the act of masturbation. We reach this conclusion for several reasons.

---

[61]  *Hayes v. State*, 474 P.3d 1179, 1183 (Alaska App. 2020) (citations omitted).

[62]  *Id.* (citations omitted).

[63]  Former AS 11.41.458 (2016). The masturbation theory was first enacted in 1998, but the language of the statute was restructured in 2005, when the legislature added the recidivist theory. SLA 1998, ch. 81, § 3; SLA 2005, ch. 62, § 1.

First, the syntax of the introductory language — stating that a person "violates AS 11.41.460(a), [and] the offense occurs within the observation of a person under 16" — supports the interpretation that the word "offense" refers to the immediately preceding reference to AS 11.41.460(a), second-degree indecent exposure. The word "offense" would not generally refer to first-degree indecent exposure itself because that is the offense being defined.

For the same reason, and because we generally ascribe a consistent meaning to the same word within the same statute,[64] the word "offense" in subsection (a)(1) — *i.e.*, "while committing the act constituting the offense, the offender knowingly masturbates" — refers to the conduct element of second-degree indecent exposure, *i.e.*, the offender's act of exposing their genitals.

Second, and more notably, the introductory clause — which again requires that "the offense occur[] within the observation of a person under 16" — applies to both circumstances that elevate second-degree indecent exposure to first-degree — (1) a defendant's act of knowingly masturbating, and (2) a defendant's prior conviction. If the observational requirement in the introductory clause applies to the act of masturbation, it must also apply to the prior conviction element.

But this would make little sense. Rather, in light of the impracticality of applying the observational requirement to the prior conviction element, it becomes clear that the "offense" that must "occur[] within the observation of a person under 16 years of age" refers to the act of exposure, being done by a defendant who has a prior similar

_____

[64] *Fancyboy v. Alaska Vill. Elec. Coop., Inc.*, 984 P.2d 1128, 1133 (Alaska 1999).

conviction. Likewise, it is the act of exposure — not the act of masturbation — that must occur within the observation of a person under sixteen years old.[65]

Finally, we note that the first-degree indecent exposure statute only requires that the "*act* constituting the offense" — *i.e.*, the offender knowingly exposing their

---

[65] The initial version of AS 11.41.458 further supports this interpretation. Felony-level (first-degree) indecent exposure was first enacted in 1998. SLA 1998, ch. 81, § 3. The only aggravating circumstance at that time was a theory of masturbation. The statute, as enacted in 1998, provided:

> (a) An offender commits the crime of indecent exposure in the first degree if
> (1) the offender violate[d] AS 11.41.460(a) [the second-degree indecent exposure statute];
> (2) while committing the act constituting the offense, the offender knowingly masturbate[d]; and
> (3) the offense occur[red] within the observation of a person under 16 years of age.

It is clear that the "act constituting the offense" in subsection (a)(2) refers to the conduct underlying the offense of second-degree indecent exposure — and that it is *this* offense that, for purposes of subsection (a)(3), must "occur within the observation of a person under 16 years of age." (In 2005, the legislature restructured the first-degree indecent exposure statute to add a recidivist theory — and it is this version of the statute under which Cunningham was convicted. There is no indication in the legislative history that the 2005 amendments were intended to change the meaning of the masturbation theory.)

In 2019, after Cunningham's offense in this case, the statute was further amended. FSSLA 2019, ch. 4, § 15. Under the current version of the statute, a person is guilty of first-degree indecent exposure if the person commits second-degree indecent exposure and (1) "while committing the act constituting the offense, . . . knowingly masturbates," or (2) the person has been previously convicted. AS 11.41.458(a). The age of the victim determines the classification of the felony offense; the offense is elevated from a class C to a class B felony "if the offense occurs within the observation of a person under 16 years of age." AS 11.41.458(b). We express no opinion on the import of these revisions to the statutory question presented here.

genitals — occur "within the observation" of the child victim.[66] Alaska's criminal code divides the elements of crimes into three different categories: conduct, circumstances, and results.[67] "Conduct" refers to an "act or omission and its accompanying mental state" — *i.e.*, what a defendant did or failed to do.[68] The "conduct" or "act" of second-degree indecent exposure is "knowingly expos[ing] the offender's genitals."[69] The additional requirement that the exposure occur "in the presence of another person" does not refer to the defendant's conduct, but rather to a result or circumstance of their conduct.[70] We therefore conclude that the "act constituting the offense" of second-degree indecent exposure is the defendant's continuing act of exposing themselves. The implication of this conclusion is that the child does not need to see the defendant's act of masturbation in order for the defendant to be guilty of first-degree indecent exposure.

Indeed, one would expect most children (and, for that matter, most adults) to quickly turn away if they encountered an unwanted act of genital exposure. If the State were required to prove that another person (particularly, a child) actually *saw* the defendant masturbating, the defendant's culpability in such cases might be determined largely by chance, even when video evidence clearly established that the defendant was, in fact, masturbating. For example, did the other person look up at the moment the defendant was masturbating? Did the other person look for long enough to be able to determine that the defendant was in fact masturbating? And is the other person able to

---

[66] Former AS 11.41.458 (2016) (emphasis added).

[67] AS 11.81.610.

[68] AS 11.81.900(b)(7).

[69] AS 11.41.460(a).

[70] *Id.*

describe what was seen as masturbation?[71] Based on our review of the statute underlying Cunningham's conviction and its legislative history, we conclude that the legislature intended to tie the defendant's culpability to their underlying conduct, not to the particular moment the child actually saw the defendant's exposed genitals.

In short, there is no indication that the legislature intended to hinge the elevated offense on whether the child actually saw the defendant masturbating (although as a practical matter, in the absence of a surveillance camera, viewing by *someone* will often be necessary).

For all these reasons, even if we were to interpret "within the observation of" as requiring actual observation (as opposed to observational range), as Cunningham contends, that requirement would only apply to the act of exposure, not the act of masturbation. And because there is no dispute that A.C. actually saw Cunningham's genitals — she testified that she saw Cunningham's "privates" and the superior court found that she actually saw Cunningham's genitals — we need not definitively decide the meaning of the phrase "within the observation of."

We therefore uphold the superior court's guilty verdict on Count I (the masturbation theory), and we affirm Cunningham's conviction.

*Cunningham is subject to a 15-year registration requirement, not a lifetime registration requirement*

Under the Alaska Sex Offender Registration Act (ASORA), a person is subject to a lifetime sex offender registration requirement if the person has been

---

[71]   Indeed, in this case, A.C.'s mother testified that she had no reason to believe that A.C. was aware of what it means to masturbate.

convicted of one "aggravated sex offense" or two or more "sex offenses."[72] A person is subject to a 15-year registration requirement — *i.e.*, a registration requirement that ends 15 years following the defendant's unconditional discharge from the conviction — if the person has been convicted of only a single, non-aggravated "sex offense."[73]

The term "sex offense" is defined under AS 12.63.100 and includes first-degree indecent exposure (or a similar law of another jurisdiction).[74] There is therefore no dispute that Cunningham now has an obligation to register due to his conviction for first-degree indecent exposure under AS 11.41.458.

In the superior court, however, the parties disputed the *duration* of Cunningham's registration requirement. First-degree indecent exposure is not an aggravated sex offense.[75] Thus, whether Cunningham has a lifetime registration requirement hinges on whether Cunningham's prior convictions in Oregon qualify as "sex offenses," such that Cunningham now stands convicted of *two or more* sex offenses. The superior court accepted the State's argument that Cunningham had two or more convictions for sex offenses and imposed a lifetime registration requirement.

On appeal, the State now concedes that the superior court's ruling was incorrect. We conclude that the State's concession is well-founded.[76]

Cunningham's prior Oregon offenses do not qualify as "sex offenses" under ASORA. The definition of "sex offense" at the time of Cunningham's offense included second-degree indecent exposure or "a similar law of another jurisdiction," but only "if

---

[72] AS 12.63.020(a)(1)(A).

[73] AS 12.63.020(a)(1)(B).

[74] AS 12.63.100(7)(C)(iii).

[75] *See* AS 12.63.100(1).

[76] *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972).

the indecent exposure is before a person under 16 years of age and the offender ha[d] a previous conviction" under AS 11.41.460.[77]   Regardless of whether Cunningham committed his prior offenses before a person under sixteen years old,[78] at the time Cunningham committed his prior offenses, he had not been previously convicted of indecent exposure.[79]

For these reasons, we agree with Cunningham and the State that Cunningham has been convicted of only a single "sex offense" for purposes of ASORA and is thus subject to a 15-year registration requirement.  We therefore remand this case to the superior court with directions to delete the lifetime registration requirement in the

---

[77]   Former AS 12.63.100(6)(C)(iv) (2016).  The statute has since been slightly reworded and renumbered.  *See* AS 12.63.100(7)(C)(iv).

[78]   As we noted earlier, when determining whether an Alaska statute is "similar" to an out-of-state statute for purposes of ASORA, we look only at the elements of the statutes at issue, not the specific facts underlying the crime.  *State, Dep't of Pub. Safety v. Doe*, 425 P.3d 115, 119-20 (Alaska 2018).  The Oregon statute under which Cunningham was convicted did not require proof that the indecent exposure occurred before any person, let alone someone under the age of sixteen.  Former Or. Rev. Stat. § 163.465 (2015).

[79]   *See Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 99 (Alaska 2012) ("The legislature's specific directive that only those individuals with 'previous' convictions for certain offenses would be subject to sex offender status [under ASORA] demonstrates that it did not intend to impose an equivalent requirement for those convicted of different sex offenses.").  At the time of Cunningham's offense in Alaska, a different Alaska statute — AS 12.63.020(a)(1)(B) — provided that "a person convicted of indecent exposure before a person under 16 years of age under AS 11.41.460 more than two times has been convicted of two or more sex offenses[.]"   (This statute has now been renumbered as AS 12.63.020(a)(1)(A)(ii).  FSSLA 2019, ch. 4, § 83.)  But this provision does not apply to Cunningham because he was not convicted under AS 11.41.460 (second-degree indecent exposure) — and the provision does not provide that convictions under "similar" laws of another jurisdiction may qualify, as other sections of ASORA do.  Moreover, as we already noted, the Oregon statute does not require, as an element, that the person subject to the indecent exposure was under sixteen years old.

judgment and replace it with a 15-year registration requirement under AS 12.63.020(a)(1)(B).

*Cunningham's challenge to the "vulnerable victim" aggravating factor is moot*

For the crime of first-degree indecent exposure, Cunningham was subject to a presumptive sentencing range of 2 to 12 years.[80] The maximum sentence for this offense was 99 years.[81]

The State argued that the superior court (sitting as fact-finder) should find the "vulnerable victim" aggravator under AS 12.55.155(c)(5) — that Cunningham "knew or reasonably should have known that [A.C.] was particularly vulnerable or incapable of resistance due to . . . extreme youth or was for any other reason substantially incapable of exercising normal physical or mental powers of resistance[.]" The State argued that this aggravator applied based solely on A.C.'s young age at the time of the offense (seven years old). Cunningham opposed, arguing that A.C. did not qualify as a particularly vulnerable victim based on her age alone.

The superior court found the aggravator, stating simply, "I'm going to find the aggravator (c)(5) because of the age of the victim here." The court nonetheless found that the *Chaney* criteria — and in particular community condemnation and reaffirmation of societal norms — could be met by a sentence within the presumptive range. The court imposed a sentence of 12 years with 8 years suspended (4 years to serve).

In *Braaten v. State*, we held that the (c)(5) aggravator "requires a finding that the victim was 'substantially incapable of exercising normal physical or mental

---

[80] Former AS 12.55.125(i)(4)(A) (2016).

[81] *Id.*

powers of resistance,' either for one of the reasons listed or for some similar reason[.]"[82] On appeal, Cunningham argues that the evidence failed to establish that A.C. was "substantially incapable of exercising normal physical or mental powers of resistance" due to her age, or that she was particularly vulnerable relative to the class of victims to whom the statute applies (*i.e.*, children under the age of sixteen).[83]

We conclude that any error is moot and does not require a remand for reconsideration or resentencing. The court did not impose a sentence above the presumptive range. That is, the sentence imposed was authorized even absent any aggravating factors.[84] Moreover, the court found the aggravator based solely on a single fact, A.C.'s age, and did not rely on any legally impermissible considerations.[85] In imposing a sentence within the presumptive range, the court was authorized to take into account this single fact, even without the formal finding of an aggravator.[86]

---

[82] *Braaten v. State*, 705 P.2d 1311, 1322 (Alaska App. 1985).

[83] *See Lee v. State*, 2019 WL 320137, at *2 (Alaska App. Jan. 23, 2019) (unpublished) (stating that the (c)(5) aggravator applies if the victim was "particularly vulnerable compared to the typical victim" of a crime, *i.e.*, "particularly vulnerable among the class of victims" of a certain crime).

[84] *See Allen v. State*, 56 P.3d 683, 685 (Alaska App. 2002).

[85] *Cf. Anderson v. State*, 123 P.3d 1110, 1121 (Alaska App. 2005) (remanding for reconsideration of the defendant's sentence when the court found legally impermissible aggravating factors based on conduct for which the defendant had been separately convicted), *abrogated on other grounds in Young v. State*, 374 P.3d 395 (Alaska 2016).

[86] *See* AS 12.55.005(4) (requiring that a sentencing court consider "the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order"); *see also State v. Andrews*, 707 P.2d 900, 911 (Alaska App. 1985) (agreeing with sentencing court's ruling that, while sexual abuse of a minor statutes required an age disparity between the victim and the defendant, eight- and nine-year-old sexual abuse victims were "particularly vulnerable" due to their youth). *Cf. Krack v. State*, 973 P.2d 100, 104

(continued...)

Cunningham does not argue that his sentence is excessive. We therefore affirm his sentence.

*Conclusion*

We REMAND this case to the superior court to correct the judgment in two respects: (1) to eliminate any reference to a guilty verdict on Count II, and (2) to amend the term of sex offender registration to 15 years under AS 12.63.020(a)(1)(B). In all other respects, the judgment of the superior court is AFFIRMED.

---

[86] (...continued)
(Alaska App. 1999) (recognizing that, even though the judge did not find the small-quantity mitigating factor by clear and convincing evidence, the judge was still authorized to consider the small amount of drugs when imposing sentence for an offense not subject to presumptive sentencing).